**William Lyle WORATZECK, Petitioner,**

v.

**Samuel LEWIS, Director, Department of Corrections, et al., Respondents.**

**No. CIV-84-1783-PHX-CAM.**

United States District Court,
D. Arizona.

Aug. 4, 1994.

David J. Burman, Kevin J. Hamilton, Perkins & Coie, Seattle, WA, for petitioner.

Crane McClennen, Office of the Atty. Gen. for the State of Arizona, Crim. Appeals Section, Phoenix, AZ, for respondents.

### MEMORANDUM AND ORDER

MUECKE, District Judge.

Pursuant to 28 U.S.C. § 2254, William Lyle Woratzeck filed a petition for a writ of habeas corpus in this court on September 24, 1984. On May 20, 1985, this Court granted Respondents' motion for summary judgment, denied Petitioner's cross motion for summary judgment and dismissed the petition. On June 28, 1985, this Court denied Petitioner's motion to "alter and amend findings of fact and/or to modify and/or vacate judgment." On July 12, 1985, Petitioner filed his notice of appeal and on July 16, 1985, this Court issued a certificate of probable cause.

On September 1, 1987, the United States Court of Appeals for the Ninth Circuit affirmed this Court's denial of relief. *Woratzeck v. Ricketts,* 820 F.2d 1450 (9th Cir.1987). On June 13, 1988, the United States Supreme Court vacated that judgment and remanded

the case to the Ninth Circuit "for further consideration in light of *Maynard v. Cartwright*," 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *Woratzeck v. Ricketts*, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988). On November 7, 1988, the Ninth Circuit vacated this Court's judgment and remanded the matter for "consideration in light of *Maynard*" and also advised this Court to consider the Ninth Circuit opinion in *Adamson v. Ricketts*, when issued. *Woratzeck v. Ricketts*, 859 F.2d 1559 (9th Cir. 1988).

The Ninth Circuit issued its en banc opinion in *Adamson* on December 22, 1988. *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir.1988). On January 12, 1989, the Court ordered the parties to brief the procedural and substantive effects of the *Adamson* decision on Petitioner's case. On January 20, 1989, Respondents requested the Court to stay proceedings in this matter pending finality of the *Adamson* decision. On February 13, 1989, this Court granted Respondents' motion for a stay in proceedings pending determination of the State's petition for certiorari.

On October 8, 1991, in light of *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511, *reh'g denied*, 497 U.S. 1050, 111 S.Ct. 14, 111 L.Ed.2d 828 (1990), Respondents asked the Court to vacate its previous order and lift the stay on proceedings in this matter. On December 11, 1991, the Court granted Respondents' motion. In addition, the Court asked the parties to submit briefs regarding the effect of *Walton* and its companion case, *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606, *reh'g denied*, 497 U.S. 1050, 111 S.Ct. 14, 111 L.Ed.2d 829 (1990), on these proceedings. The Court also ordered the parties to address whether there were any changes in the law that would mandate relief and whether

Petitioner should be allowed to re-argue his claims and/or raise any new claims.

On February 26, 1993, after submission of the requested briefing, Petitioner filed a motion for summary judgment contending that the "especially heinous, cruel and depraved" aggravating factor was not sufficiently narrowed at the time of Petitioner's sentencing and that in light of *Richmond v. Lewis*, —— U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), Petitioner was entitled to have the state courts perform a new sentencing calculus.

On October 1, 1993, the Court issued an order [file doc. no. 82] reviewing the procedural posture of this case and the matters then pending before it. Upon review the Court concluded that it had no need to revisit the majority of issues raised, decided on-the-merits and subsequently affirmed by the Ninth Circuit. The Court, therefore, modified and reinstated its prior judgment [file doc. no. 24] of May 20, 1985. *See* (Order of 10/1/93, at pg. 11).[1] In addition, the Court noted that it would; 1) defer ruling upon Petitioner's motion for summary judgment because the identical issue raised in the motion was then pending before the Ninth Circuit in *Mata v. Ricketts*, No. 87–1731; 2) that it would defer ruling upon five other claims potentially effected by that decision;[2] and 3) allow Petitioner the opportunity to file a motion to amend the petition to enable the Court to evaluate the circumstances and determine whether Petitioner should be granted leave to amend his petition to add new and potentially unexhausted claims.

On November 16, 1993, Petitioner filed a motion requesting the Court to hold an evidentiary hearing, or in the alternative, to grant him leave to amend his petition to add new allegations of ineffective assistance of counsel [file doc. no. 88]. On May 13, 1994, the Ninth Circuit panel denied Mata all relief

---

**1.** The Court modified its judgment with respect to six claims by noting that relief was foreclosed by *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (finding constitutional Arizona's capital punishment statute).

**2.** The Court deferred ruling upon claims 20, 28, 29, 34, 35, as identified in the petition, because

each of these claims involved some challenge to one of the two aggravating factors found in this case. Accordingly, the Court believed that if Petitioner prevailed upon his motion for summary judgment, further discussion of these claims may also have been required prior to rendering a final decision.

in an unpublished order.[3] As the issue is no longer pending, the Court will now address Petitioner's motion for summary judgment and his remaining claims.

### DISCUSSION

Currently pending before the Court are five claims which were raised in Petitioner's petition filed on September 24, 1984:

Claim 20: Petitioner did not commit gratuitous violence upon the victim and application of the (F)(6) factor is inappropriate.

Claim 28: The (F)(6) "especially heinous, cruel, and depraved" aggravating factor is unconstitutionally vague.

Claim 29: The (F)(5) "pecuniary gain" aggravating factor is unconstitutionally vague and violates principles of double jeopardy in cases of felony murder.

Claim 34: The evidence does not support application of the pecuniary gain factor nor did the trial court find that the factor existed beyond a reasonable doubt.

Claim 35: The evidence does not support application of the especially heinous, cruel, and depraved factor nor did the trial court find that the factor existed beyond a reasonable doubt.

The original remand order and Petitioner's current motion for summary judgment concern primarily Claim 28 as it is identified in the petition. Although the Court reinstated its judgment with respect to a majority of Petitioner's claims, it deferred ruling upon the other four claims noted above primarily because the issues raised in those claims related to, and could have been affected by the Court's resolution of Claim 28.[4] Also pending before the Court are Petitioner's motions for an evidentiary hearing or in the alternative leave to amend the petition.

**3.** The Court is aware that pursuant to Rule 36–3 unpublished orders of the Court of Appeals are not to be cited for any authoritative purposes other than those specified in the Rule. The Court refers to the order only for the purpose of noting that its original reason for deferring judgment is no longer valid.

**4.** The Court also determined that some of these claims must be reevaluated in light of intervening changes in the law. For example, claims involving sufficiency of the evidence to support aggravating factors are not subject to the pre-

## I. PENDING CLAIMS AND MOTION FOR SUMMARY JUDGMENT:

### A. *Claim 28: Constitutionality Of (F)(6) Aggravating Factor*

Petitioner received the death penalty based, in part, upon the trial court's finding that the murder was committed in an "especially heinous, cruel and depraved" manner pursuant to A.R.S. § 13–703(F)(6).[5] In Claim 28 and in his motion for summary judgment Petitioner contends that this factor is facially vague and was not constitutionally narrowed at the time of his sentencing in 1980.[6] Consequently, Petitioner contends that his death sentence was obtained through a standardless procedure and he is, therefore, entitled to be resentenced pursuant to what he asserts is the current and adequate narrowing construction provided in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983).

In opposition, Respondents assert that Petitioner was not sentenced in a standardless fashion. Respondents contend that *Gretzler* only summarized existing Arizona case law and did not *establish* a narrowing construction. Further, Respondents argue that because *Gretzler* merely summarized existing law, it may not serve as a basis to invalidate all death sentences rendered prior to the date it was issued.

#### 1. APPLICABLE LAW:

In 1972, the United States Supreme Court invalidated several capital sentencing statutes and held that all such statutes must adequately guide the sentencer's discretion. *Furman v. Georgia*, 408 U.S. 238, 256, 92 S.Ct. 2726, 2735, 33 L.Ed.2d 346 (1972) (Douglas, J., concurring). In 1976, after em-

sumption of correctness provided by 28 U.S.C. § 2254(d) as the Court had previously found and must be evaluated under the "rational factfinder" standard. *See* Order of 10/1/93, at pg. 7.

**5.** Petitioner was also sentenced to death based upon the "pecuniary gain" aggravating factor as provided by Ariz.Rev.Stat.Ann. § 13–703(F)(5).

**6.** The parties do not dispute and it has been held that the (F)(6) factor is facially vague. *See Walton v. Arizona*, 497 U.S. at 654, 110 S.Ct. at 3057.

ploying similar reasoning, the Supreme Court found unconstitutional North Carolina and Louisiana statutes containing mandatory death sentence provisions, while upholding Georgia, Florida, and Texas death penalty statutes that sufficiently channeled or guided the sentencer's discretion. *See Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (finding statute unconstitutional because it mandated death as penalty for the commission of certain offenses); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) (same); *compare, Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (finding that statute sufficiently guided jury's discretion by permitting sentence of death if specified aggravating factors were established); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (finding that statute sufficiently guided discretion where death sentence permitted only after a weighing of aggravating and mitigating circumstances); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (same).

The 1976 decisions delineated the fundamental Eighth Amendment requirements which death penalty statutes must satisfy in order to pass constitutional muster. The required elements are that a statute must narrow the class of death eligible defendants and also guide the sentencer's discretion to ensure an individualized determination regarding the propriety of the death sentence. *Gregg*, 428 U.S. at 189, 96 S.Ct. 2909; *See also Zant v. Stephens*, 462 U.S. 862, 877–78, 103 S.Ct. 2733, 2742–43, 77 L.Ed.2d 235 (1983) (noting that aggravating factors must narrow the class of persons eligible for the death penalty and reasonably justify imposition of a more severe sentence compared to others found guilty of murder).

Continuing to develop the principle that death penalty statutes must genuinely narrow the class of death eligible defendants, the Supreme Court held that application of an unconstitutionally vague aggravating factor violates the Eighth Amendment. *Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S.Ct.

1759, 1767, 64 L.Ed.2d 398 (1980). The statutory aggravating factor in *Godfrey* provided that death could be imposed if the murder was "outrageously or wantonly vile, horrible or inhumane" in that it involved "torture, depravity of mind, or an aggravated battery to the victim." *Id.* at 429, 100 S.Ct. at 1765. Although the Georgia Supreme Court had narrowly construed this factor by requiring the jury to find that the murder was committed through "torture", the trial court failed to inform the jury of this requirement.[7] The jury, therefore, sentenced Godfrey to death after finding the murder only "outrageously or wantonly vile, horrible or inhumane." In reversing Godfrey's sentence, the Supreme Court noted that there was nothing in the words "outrageously or wantonly vile, horrible or inhumane" to sufficiently guide the jury's discretion. *Id.* at 433, 100 S.Ct. at 1767.

Adhering to the principles espoused in *Godfrey,* the Supreme Court has invalidated other statutes that failed to adequately channel a jury's discretion. In *Maynard v. Cartwright*, 486 U.S. 356, 366, 108 S.Ct. 1853, 1860, 100 L.Ed.2d 372 (1988), for example, the Supreme Court found Oklahoma's statutory aggravating factor, that the murder was "heinous, atrocious or cruel", to be unconstitutionally vague on its face and as applied because no limiting construction was utilized. Similarly, the Court has found ineffective attempts to utilize equally vague terms or definitions to narrow facially vague statutes. For example, in *Shell v. Mississippi*, 498 U.S. 1, 2, 111 S.Ct. 313, 313, 112 L.Ed.2d 1 (1990), the State tried to avoid the problems discussed in *Maynard* by explaining the terms "especially heinous, atrocious or cruel" through use of dictionary definitions such as "extremely wicked or shockingly evil" and "outrageously wicked or vile." *Id.* Upon review, the Supreme Court reversed Shell's sentence finding that the terms utilized provided the jury little guidance and would not prevent arbitrary imposition of the death penalty.

---

7. The Georgia Supreme Court also failed to review the sentence utilizing the limiting construc-
tion.

## 2. ANALYSIS:

■ When a capital sentencing statute is challenged as unconstitutionally vague the federal habeas court, after determining that it is in fact facially vague, must determine whether the "state courts have further defined the vague terms and if they have done so, whether those definitions are constitutionally sufficient, i.e., whether they provide *some* guidance to the sentencer." *Walton v. Arizona,* 497 U.S. at 654, 110 S.Ct. at 3057. (emphasis in original).

■ Petitioner contends that Arizona's (F)(6) factor was not adequately narrowed prior to the Arizona Supreme Court's decision in *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1 (1983). Petitioner contends, therefore, that at the time of his sentencing in 1980, the trial court did not have the benefit of an adequate narrowing construction to properly evaluate the evidence and determine the applicability of the (F)(6) factor.

A review of *Gretzler* discloses that the Arizona Supreme Court did little more than review and summarize its previous (F)(6) death penalty decisions. *See Gretzler,* 135 Ariz. at 51–53, 659 P.2d at 9–12. In fact, the court stated "[a] summary of the law which has been developing in [this] area supports [the] conclusion" that the (F)(6) factor "has been construed in a constitutionally narrow fashion." *Gretzler,* 135 Ariz. at 50, 659 P.2d at 9.

The Ninth Circuit has also acknowledge *Gretzler's* limited significance. As the Ninth Circuit noted in *Adamson v. Ricketts,* 865 F.2d 1011, 1032 (1988), the Arizona Supreme Court did not create a narrowing construction in *Gretzler,* rather it merely "reviewed" all of the cases discussing the (F)(6) factor. The court found that at most *Gretzler* provided a "checklist" of already established parameters. *Id.* at 1033. As the Court noted, "*Gretzler* reviewed a large number of cases, it did not ... state[ ] what specific factors are *necessary* for an (F)(6) finding. Moreover, the court did not include any instructions to limit future review to the enumerated factors." *Id.* (emphasis in original).

A similar interpretation of *Gretzler* may be found in Justice Blackmun's dissent in *Lewis*

*v. Jeffers,* 497 U.S. at 784, 110 S.Ct. at 3104. On behalf of three other justices, and with far greater analysis than employed by the majority, Justice Blackmun noted:

> The Arizona Supreme Court's opinion in *Gretzler* obviously did *not* announce a "narrowing construction" of the F6 circumstance ... Instead, the Arizona Supreme Court cited [dictionary] definitions with approval and then gave *examples* of their application ... I do not see how the Arizona Supreme Court's *description* of the manner in which a vague aggravating factor has been applied can be regarded as the establishment of a constitutionally sufficient narrowing construction.

*Id.* at 789, 110 S.Ct. at 3107 (emphasis in original).

Relying upon dicta in *Richmond v. Lewis,* — U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), however, Petitioner contends that the Supreme Court has specifically held that *Gretzler* was the first time Arizona adequately narrowed the (F)(6) factor. The Court finds that contrary to Petitioner's contention, *Richmond* did not hold that prior to *Gretzler* the (F)(6) aggravating factor was not constitutionally narrowed. Rather, the Supreme Court decided only whether a proper appellate reweighing was done in light of the fact that a majority of the Arizona Supreme Court invalidated one aggravating circumstance applied in Richmond's case.

As there has been no definitive holding regarding the import of *Gretzler* itself, there are only two ways in which *Gretzler* could be rationally found to have *established* a unique narrowing construction. The first would be if it is held that mere summarization of existing law into an organized format is sufficient to "create" a limiting construction. The second possibility would be to hold that *only* because of the number of cases existing by the time *Gretzler* was decided did a sufficient database exist upon which trial judges could rely and construe the (F)(6) factor.

■ Upon consideration, the Court finds the first possibility frivolous and the second unpersuasive. The second possibility would also be difficult to analyze and would require a somewhat arbitrary and subjective finding

of *when* the narrowing construction evolved to an acceptable state. As the Supreme Court itself has noted, "the proper degree of definition of an aggravating factor of this nature is not susceptible [to] mathematical precision." *Walton*, 497 U.S. at 655, 110 S.Ct. at 3058.[8] Thus, the mere number of cases in itself cannot effectively *establish* a narrowing construction, even if they are utilized to provide some additional understanding.

■ Existing federal case law, however, mandates that the sentencing body in a capital case must be provided some guidance prior to evaluating the evidence and determining the appropriate punishment. Cases such as *Godfrey* and *Maynard* make clear that a jury's discretion must be channeled and governed to avoid arbitrary imposition of the death penalty. In Arizona, however, the sentencer is the trial judge.

The fact that a trial judge performs the sentencing calculus is of critical significance for it would seem the necessity that a limiting construction specify what constitutes a heinous, cruel or depraved murder is directly proportional to the limited experience and resources upon which the sentencer may draw to evaluate the facts presented and make the required individualized determination as to the appropriateness of the death penalty. Consequently, in states where a jury determines the existence of aggravating factors, the narrowing construction must be specific in order to channel their discretion.

In contrast, where a judge determines the existence of aggravating factors, specificity is not as critical and "some guidance" is sufficient:

> When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on is face. That is the import of our holdings in *Maynard* and *Godfrey. But the logic of those cases has*

*no place in the context of sentencing by a trial judge.* Trial judges are presumed to know the law and to apply it in making their decisions.

*Walton*, 497 U.S. at 653, 110 S.Ct. at 3057 (emphasis added).

In addition to *Walton*, the Supreme Court has demonstrated a willingness to view differently the Eighth Amendment concerns when judicial rather than jury sentencing is involved. In *Espinosa v. Florida*, —— U.S. ——, ——, 112 S.Ct. 2926, 2928, 120 L.Ed.2d 854 (1992), the jury was instructed on Florida's aggravating factor of "especially wicked, evil, atrocious or cruel." After granting certiorari, the United States Supreme Court noted that the factor was vague on its face, and addressed Florida's contention that specificity was not required because the judge rather than the jury is the final sentencer for Eighth Amendment purposes. *Id.* at ——, 112 S.Ct. at 2928.

Although the Supreme Court ruled against the State, it did so on the basis that under Florida law, the judge *must* accord great deference to the jury's advisory verdict and, therefore, may indirectly rely upon a vague factor in violation of the Eighth Amendment. A similar possibility does not exist under Arizona procedure.

■ A review of the relevant case law leads this Court to two conclusions. First, *Gretzler* was merely a comprehensive summation of existing case law and provided no new or required definition or interpretation to the (F)(6) factor. Second, because sentencing judges are presumed to know the law and apply it correctly, narrowing constructions need not be as specific in a state where a judge is the final sentencer for Eighth Amendment purposes as long as "some guidance" is available.

Petitioner is, therefore, not entitled to relief from his sentence of death based upon the challenges raised in Claim 28 of his habeas petition. In addition, Petitioner's motion for summary judgment is denied and Re-

---

8. The Supreme Court has found that Arizona's narrowing construction that a "depraved" murderer is one who " 'relishes the murder, evidencing debasement or perversion,' or 'show an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing" is constitutionally sufficient. *Walton*, 497 U.S. at 655, 110 S.Ct. at 3058.

spondents' cross-motion for summary judgment is granted.

### B. *Claim 29: Constitutionality of the (F)(5) Factor*

■ Petitioner alleges the (F)(5)—"pecuniary gain"—factor was not adequately defined or narrowed because it failed to differentiate between situations involving murder for hire and situations where the murders occurred during the course of a robbery. *See* Petition, at pg. 22. The Court finds Petitioner's contention unpersuasive.

As noted previously, a state statute, *if* facially vague, must be construed by the state courts in a manner sufficient to provide the sentencer with *some* guidance. *Walton v. Arizona*, 497 U.S. at 654, 110 S.Ct. at 3057. The Court finds the (F)(5) factor meets constitutional standards and narrows the category of individuals eligible for the death penalty.

First, unlike the (F)(6) factor, the (F)(5)—"pecuniary gain"—factor is not facially vague. The clear meaning of the words themselves provide the minimal guidance required by *Walton.* Second, Petitioner was sentenced on November 10, 1980, after the Arizona Supreme Court had already considered and rejected a similar contention in a prior case and had adequately construed the factor. *See State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980) (finding unpersuasive any argument that (F)(5) factor applies only in murder for hire case and noting its applicability to any murder committed for any form of financial gain).

■ The second aspect of Petitioner's claim is that convicting an individual of felony murder based upon a robbery, and then considering the circumstances surrounding the same felony with respect to the sentencing phase violates the prohibitions of the Double Jeopardy Clause of the Fifth Amendment. Petitioner's contention, however, has little merit. *See Schiro v. Farley*, — U.S. —, — – —, 114 S.Ct. 783, 789–90, 127 L.Ed.2d 47 (1994) (finding repeated use of elements during the sentencing phase of one bifurcated prosecution not violative of the double jeopardy clause).

Accordingly, Petitioner is not entitled to relief on either ground raised in Claim 29 of his federal habeas petition.

### C. *Claims 20, 34, & 35: Sufficiency of the Evidence; Standard of Proof*

The remaining three claims involve two distinct questions. The first involves the standard of proof governing the existence of aggravating factors and the specificity with which those findings must be made. The second question is whether the evidence in this case was sufficient to support the trial court's finding that the (F)(5) and (F)(6) aggravating factors existed.

### 1. STANDARD OF PROOF:

■ Petitioner contends that he is entitled to habeas relief because his death sentence was imposed even though the trial court allegedly failed to find the existence of the aggravating factors beyond a reasonable doubt as required by state law. *See State v. Jordan*, 126 Ariz. 283, 286, 614 P.2d 825, *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Petitioner relies primarily upon the Ninth Circuit's decision in *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991) (en banc), *rev'd in part*, — U.S. —, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), which found a constitutional violation in a sentencing court's failure to explicitly state that specific intent was proven beyond a reasonable doubt as required by Idaho law. *Creech*, 947 F.2d at 881–82.

Respondents oppose Petitioner's request for habeas relief contending that there is no *federal* constitutional right to have aggravating factors proven beyond a reasonable doubt in a capital sentencing proceeding and that despite this fact, the trial court satisfied its obligation to find the circumstances beyond a reasonable doubt pursuant to state law.

At present, neither the Supreme Court nor the Ninth Circuit has determined what burden of proof must be satisfied when proving the existence of aggravating factors. In fact, the Ninth Circuit recently declined to decide whether aggravating factors must be proven beyond a reasonable doubt as a matter of *federal* constitutional law. *See Clark v. Rick-*

*etts,* 958 F.2d 851, 860 n. 6 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). To be entitled to habeas relief, therefore, Petitioner must demonstrate that a failure to state, on-the-record, that aggravating factors have been proven beyond a reasonable doubt renders a sentence invalid as a matter of *federal* constitutional law. In the alternative, Petitioner could also be entitled to relief if he ·was capable of demonstrating that he was arbitrarily deprived of a liberty interest created by state law. *See e.g. Creech,* 947 F.2d at 881–82. Upon review, the Court finds both contentions unpersuasive.

Although there is no controlling precedent defining what standard of proof is constitutionally required in capital sentencing proceedings, persuasive analogies can be drawn to cases where sentencing enhancements are sought under the Federal Sentencing Guidelines. In reviewing the burden of proof needed to establish enhancing factors, the Ninth Circuit has held that due process does not require anything more than proof by a preponderance of the evidence. *United States v. Restrepo,* 946 F.2d 654 (9th Cir. 1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). The court noted that a "sentencing factor" is not an *element* of the offense and, therefore, did not require a heightened standard of proof before it could be deemed applicable. *Id.* at 656. Further, the court reasoned that because sentencing factors are determined in a fully adversarial process, the defendant's rights are adequately protected. *Id.* at 658.

 The same logic may be applied in a death penalty case. An aggravating factor in the penalty phase of a capital proceeding is not an *element* of the offense. Rather, aggravating factors are " 'standards to guide the making of [the] choice' between death and life imprisonment." *Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990) (quoting *Poland v. Arizona,* 476 U.S. 147, 156, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986)). They are clearly "sentencing factor[s] that come[ ] into play

only after the defendant has been found guilty." *Hildwin v. Florida,* 490 U.S. 638, 640, 109 S.Ct. 2055, 2056, 104 L.Ed.2d 728 (1989) (quoting *McMillan v. Pennsylvania,* 477 U.S. 79, 86, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986)).[9] Further, similar to the reasoning in *Restrepo,* the Arizona sentencing scheme provides numerous protections for the capital defendant. For example, the penalty phase is a fully adversarial proceeding which is then followed by a mandatory direct appeal.

The Court finds, therefore, that the federal constitution does not require that aggravating factors in a capital sentencing proceeding be proven beyond ·a reasonable doubt. Similarly, any argument that Petitioner was deprived of due process if the Arizona courts failed to state that the· factors were proven beyond a reasonable doubt is foreclosed by *Clark.*

 In *Clark,* the Court of Appeals found that it did not need to reach the issue because Clark's appeal was decided 36 days *after* the Arizona Supreme Court found the beyond a reasonable doubt standard applicable to capital sentencing proceedings in *Jordan. Clark,* 958 F.2d at 859–60. The Court of Appeals found it ludicrous to assume that the Arizona Supreme Court had not applied its *previously* announced standard on review. *Id.* (finding sufficient the Arizona Supreme Court's statement that the aggravating factors were "established").

In Petitioner's case the trial court found specifically that the circumstance exists. It even noted the appropriate standard and stated, "the circumstantial evidence produced at trial showed *beyond a reasonable doubt,* in the Court's judgment, that the defendant was the perpetrator of the acts on which he stands convicted." *See* (R.T. of 11/10/80 at pgs. 17–18) (emphasis added). Subsequently, the Arizona Supreme Court reviewed the evidence and found that both the (F)(5) and (F)(6) factor "exists." *State v. Woratzeck,* 134 Ariz. 452, 457, 657 P.2d 865, 870 (1982). Similar to the reasoning employed in *Clark,* it is ludicrous to assume that the trial court

---

9. In addition, the court in *Restrepo* noted that the liberty interests involved at trial differ markedly from the liberty interests at sentencing. Once convicted, a defendant's interest is confined to a proper application of the statutory guidelines and nothing more.

did not apply the very standard referenced in its findings and equally ludicrous to assume that the Arizona Supreme Court did not apply the appropriate standard in this case.

## 2. SUFFICIENCY OF THE EVIDENCE:

 The Court reviews challenges to the sufficiency of the evidence to support aggravating factors by determining whether in " 'viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [aggravating factors] beyond a reasonable doubt.' " *Lewis v. Jeffers,* 497 U.S. at 781, 110 S.Ct. at 3102 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Moreover, in cases where the evidence is unclear or would support conflicting inferences, "the federal court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.' " *Payne v. Borg,* 982 F.2d 335 (9th Cir.1993) (quoting *Jackson v. Virginia,* 443 U.S. at 326, 99 S.Ct. at 2793). Whether this Court would agree with the finding is irrelevant, it is strictly whether *any* rational factfinder could have found that the evidence supports the aggravating circumstance. *Id.*

### a. (F)(5)—Pecuniary Gain Factor:

 As noted in its prior order, the Court reviewed the entire record in these proceedings and found the aggravating factors supported by the evidence. The Court has again reviewed the record in this matter in light of the authorities quoted above and concludes that a rational factfinder *could* have found the existence of the pecuniary gain factor beyond a reasonable doubt.

The jurors found Petitioner guilty of second degree burglary and robbery (R.T. of 9/15/80 at pgs. 4–5). Finding Petitioner guilty of robbery necessarily encompassed a finding by the jury that he employed force to deprive the victim of her property. In addition, there was evidence in the record regarding Petitioner's apparent lack of funds immediately preceding the murder and evidence indicating that he had in his possession

an amount almost identical to the amount which the jury found him guilty of taking from the victim by force. *See* Respondents' Response to Motion to Amend Findings and Vacate Judgment at pgs. 3–4 [file doc. no. 28]; *See also State v. Woratzeck,* 134 Ariz. at 457, 657 P.2d at 870.

There was additional testimony that Petitioner needed money and that the victim was behind in her rent payments. *See* (R.T. of 9/10/80 at pg. 163). The evidence also indicates that prior to the murder, Petitioner was in a bar, was short of funds, and played pool for drinks or fun, thereby contradicting his testimony that he won a large amount of money. (R.T. of 9/10/80 at pgs. 182–189, 205, 220).

As noted by the Arizona Supreme Court, " '[when a defendant *comes to rob,* the defendant *expects* pecuniary gain and this desire infects *all other conduct* of the defendant.' " *State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) (quoting *State v. LaGrand,* 153 Ariz. 21, 35, 734 P.2d 563, 577 (1987) (emphasis in original)). Upon review of the record, the Court is satisfied that a rational factfinder could have drawn appropriate inferences from the evidence and found the (F)(5) circumstance applicable in this case.

### b. (F)(6)—"heinous, cruel, and depraved" factor:

 Again, the Court has reviewed the record in light of the authorities quoted above and concludes that a rational factfinder *could* have found the evidence supports application of the (F)(6) factor.

The pathologist testified that the victim was choked so hard that bones were broken in her neck. Further, he opined that the victim probably lived for a very short period of time after her strangulation. (R.T. of 9/12/80, at pg. 22). The doctor also stated that she was likely alive when she was stabbed three times and noted that the stab wound in the heart was also potentially fatal. *Id.* at pg. 23. The doctor also stated that the victim was struck twice in the head with a hammer and that one of these two blows was the immediate cause of death.

The trial court and the Arizona Supreme Court found that this was a barrage of vio-

lence beyond the point necessary to steal or even kill. The pathologist confirmed the excessiveness of the violence. The Court finds a rational factfinder could find the (F)(6) factor applicable to the facts in this case.

Accordingly, Petitioner is not entitled to habeas relief based upon the allegations contained in Claims 20, 34 & 35.

## II. MOTION FOR EVIDENTIARY HEARING AND/OR LEAVE TO AMEND:

█ Petitioner requests this Court to conduct an evidentiary hearing to consider new claims of ineffective assistance of counsel as well as additional evidence in support of previously adjudicated claims of ineffective assistance of counsel. In the alternative to conducting an evidentiary hearing, Petitioner requests the Court to allow him to amend his petition to add new allegations of ineffective assistance, to grant him the opportunity to exhaust his claims in the state courts, and then to have this Court adjudicate the merits of his claims in additional future proceedings.

### A. *Evidentiary Hearing:*

Petitioner bases his request for a hearing upon what he asserts is "new" evidence of Petitioner's social and psychological background which defense counsel allegedly should have presented as mitigating evidence at the sentencing hearing. Petitioner acknowledges that while some of the evidence merely bolsters previous claims, other factors consist of new allegations that have not been previously presented to the state courts. Petitioner contends, however, that although the claims may be unexhausted, they are not barred from further review in the state system.

Although Petitioner received an evidentiary hearing in state court on his claims of ineffective assistance of counsel, Petitioner contends that he is not precluded from having additional evidentiary proceedings in this Court. Further, Petitioner contends that he must be granted an evidentiary hearing because the state court proceedings were inadequate. Petitioner contends that he must be granted a new hearing because; 1) The state court made inadequate factual findings; 2)

the state court's findings are not supported by the record; and 3) state post-conviction relief counsel's ineffective performance at the state evidentiary hearing prevented full and fair adjudication of his claims.

█ The Court has reviewed the pleadings and transcripts of the state court hearing. Upon review, the Court finds that the hearing appeared thorough and that Petitioner had every *opportunity* to present any evidence he wished in support of his claims of ineffective assistance of counsel. Once a state prisoner has been given a fair opportunity to present his evidence in state court, he will not necessarily be entitled to additional proceedings in federal court. *See Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

### 1. AUTHORITY:

█ A review of recent authority supports this decision and indicates a trend toward greater deference to state courts and greater adherence to procedural rules. "Our procedural default jurisprudence and abuse of the writ jurisprudence help define this dimension of procedural regularity. Both doctrines impose on petitioners a burden of reasonable compliance with procedures designed to discourage baseless claims and to keep the system open for valid ones; both recognize the law's interest in finality; and both invoke equitable principles." *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

Beginning with *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court commenced its trend of according great deference to state court determinations and procedures. In *Sykes,* the Court rejected the deliberate bypass standard to excuse a state prisoner's failure to comply with a state contemporaneous-objection rule and adopted the cause and prejudice standard. Subsequently in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) the Supreme Court determined that alternative holdings on both the merits and procedural grounds are not necessarily inconsistent, provided that the last state court rendering judgment on the case

"clearly and expressly" stated that its judgment rested upon state procedural grounds. *Harris v. Reed,* 489 U.S. at 263, 109 S.Ct. at 1043.

In recognition of the fact that multiple federal habeas challenges to the same conviction or sentence also jeopardize the finality of state court decisions, the Supreme Court reviewed federal standards for determining abuse of the writ. Upon review, the Supreme Court found that standardization of the law through application of the cause and prejudice test best served to enhance comity between the state and federal systems and discourage piece-meal litigation. *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Electing to accord even greater deference to state procedures, the Supreme Court virtually eliminated the "plain statement" rule announced in *Harris.* Now a federal court must make a preliminary finding that there is good reason to question whether there is an independent and adequate state ground for the decision before the *Harris* presumption may be applied. *Coleman v. Thompson,* 501 U.S. 722, 738, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991). Thus, if a state court opinion discusses no federal law and apparently bases its denial of relief on state procedural grounds, a federal court would have no reason to question the holding or apply the *Harris* presumption. *See Thomas v. Lewis,* 945 F.2d 1119, 1122 (9th Cir.1991). In addition, the Supreme Court determined that unexplained summary denials by a state's highest court should not vitiate a prior finding of procedural default. Therefore, the Court found it appropriate to "look through" to the last state court judgment explaining the basis for denying relief and presume that later unexplained judgments adopted the same reasoning. *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

Finally, extending the cause and prejudice principles developed in the abuse of the writ and procedural default cases, the Supreme Court applied the cause and prejudice test to decide whether to excuse a negligent failure to adequately develop facts in support of a claim during prior state court evidentiary proceedings. *Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

## 2. TAMAYO–REYES:

In *Tamayo–Reyes,* the accused, an immigrant unable to speak or understand English, was charged with murder. After an attorney and an interpreter were provided, Tamayo–Reyes was advised by counsel to plead nolo contendere to a charge of first degree manslaughter. After signing a plea form written in English, the Court through the interpreter, properly questioned Tamayo–Reyes and then accepted his plea.

After entry of judgment Tamayo–Reyes collaterally attacked his plea, alleging it was invalid because he did not knowingly and intelligently waive his rights or understand the nature of the plea agreement. Tamayo–Reyes based his contention upon his interpreter's alleged failure to properly translate the mens rea element of manslaughter, and further asserted that he thought he was agreeing to be tried on manslaughter charges.

The state court conducted a hearing on his claim, during which Tamayo–Reyes' counsel sought to prove the inadequate performance of his interpreter. *Counsel, however, called no expert witnesses to assess the interpreter's performance and also failed to ask potentially relevant questions of the only witness called, Tamayo–Reyes.* Instead, counsel relied primarily upon the interpreter's deposition and the answers that he viewed as indicative of inadequate performance. The State objected to this tactic, asserting that counsel was not a qualified interpreter. The state court sustained the objection and thus had little other evidence before it when it determined that the interpreter functioned adequately and denied relief.

After the federal district court denied a hearing and relief on his federal habeas petition, Tamayo–Reyes filed an appeal with the Ninth Circuit Court of Appeals. The Court of Appeals, applying § 2254(d) and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), found that Tamayo–Reyes was entitled to an evidentiary hearing

in federal court. *Tamayo–Reyes v. Keeney,* 926 F.2d 1492 (9th Cir.1991).

Upon application by the State, the Supreme Court granted certiorari to decide what standard should govern a habeas petitioner's failure to develop a material fact in state court proceedings. *Keeney v. Tamayo–Reyes,* —— U.S. at ——, 112 S.Ct. at 1717 (1992). Upon review the Supreme Court reversed the Court of Appeals and held that when a Petitioner fails to develop material facts in state court, he must demonstrate cause and prejudice for this failure before he is entitled to an evidentiary hearing in federal court. *Id.* at ——, 112 S.Ct. at 1721.

In reaching its holding the Court noted that, "[i]n light of these decisions [*McCleskey, Coleman,* and *Sykes*], it is [ ] irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim." *Tamayo–Reyes,* —— U.S. at ——, 112 S.Ct. at 1719.

### 3. CONCLUSION:

■ A fair reading of *Tamayo–Reyes* discloses that the relevant inquiry is not whether a petitioner received an evidentiary hearing in state court, but whether he had a fair *opportunity* to present his claims or evidence in state court. *See Rhoden v. Rowland,* 10 F.3d 1457, 1460 (9th Cir.1993) (noting that *Tamayo–Reyes* would not preclude a federal hearing where no state court hearing was held and petitioner had no opportunity to develop his claim).

Petitioner presented evidence which he believed demonstrated ineffective assistance during his state court evidentiary hearing. It appears clear that Petitioner now wishes to have the benefit of an evidentiary hearing in this Court to further develop evidence involving other witnesses and claims of ineffective assistance of counsel. Thus, the facts in this case and the nature of the current request virtually mirror the situation presented in *Tamayo–Reyes.* Therefore, the Court finds that not only is an evidentiary hearing not required in this case but that absent this Court exercising its discretion to hold a hearing, Petitioner would not be entitled to a one as a matter of law.

### 4. EXCEPTIONS:

Petitioner argues, however, that other circumstances noted in *Townsend* apply and require the Court to conduct further evidentiary proceedings. The Court finds unpersuasive Petitioner's contentions that the record does not support the state court's findings or that the state court's rulings were not specific.

The same argument could have been raised in *Tamayo–Reyes,* however, it is the intent of that holding that applies with equal force to the other circumstances noted in *Townsend.* That is, that a hearing is warranted in federal court provided that Petitioner in no way contributed to the inadequacy of the state court proceedings.

It is clear that Tamayo–Reyes could now obtain expert testimony or other evidence indicating the interpreter functioned inadequately and then claim the record does not support the state court's findings or that because of the lack of information presented the state court proceedings were not adequate. To grant a hearing on this basis, however, would clearly eviscerate the clear intent of the Supreme Court's holding.

■ Petitioner also contends that he should be entitled to another "bite at the apple" because his state post-conviction relief counsel rendered inadequate assistance by failing to properly investigate his case or present mitigating evidence. In *Bonin v. Vasquez,* 999 F.2d 425 (9th Cir.1993), however, the Court of Appeals considered this claim and found no exception to the rule that there is no right to the effective assistance of counsel in state collateral proceedings. The Court of Appeals found this to be true even in those instances where collateral review was the first opportunity a petitioner may have to present his claim. *Id.* at 429–30. Specifically the Court of Appeals stated:

> Because any Sixth Amendment violation constitutes cause ... federal courts would never be able to avoid reaching the merits [of] any ineffectiveness claim, regardless of the nature of the proceeding in which counsel's competence is alleged to have been defective. As a result, the 'exception' would swallow the rule. We hold that the

protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings.

*Bonin*, at 429–30 (citations omitted).

■ The performance of Petitioner's former post-conviction relief attorneys cannot constitute legitimate cause to excuse a failure to develop or present this evidence in prior state proceedings.[10] Thus, the findings of the trial court, as implied in *Tamayo–Reyes,* are adequately supported by the record existing at the time and such findings should not be presumed unsupported merely because Petitioner now presents additional evidence not presented to the state courts.[11]

**B.** *Leave to Amend:*

■ Under Rule 15(a) of the Federal Rules of Civil Procedure, after a responsive pleading has been served, "a party may amend [its] pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Though the rule is to be construed liberally, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir.1990).

■ In determining whether the Court should exercise its discretion to allow amendments, the Supreme Court has stated that the following factors should be considered:[12]

(1) whether the movant unduly delayed seeking leave to amend;

(2) whether the party opposing amendment would be unduly prejudiced by the amendment; and

(4) whether amendment would be futile.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Upon consideration of all three of these factors and the equities and concerns involved, the Court finds that the circumstances in this case warrant denying Petitioner leave to amend.

■ First, Petitioner acknowledges that he has not previously requested leave to amend his petition. This is crucial when one considers that Petitioner filed the petition in September, 1984, and yet at no time during the eight months this case was pending prior to final judgment did he request leave to amend his petition. Further, although not technically proper, Petitioner did not attempt at any time on appeal to assert new or additional grounds for relief. Moreover, between the remand of this case on November 7, 1988, and the Court's stay of proceedings on February 13, 1989, no indication was provided that the petition previously filed was in some way inadequate. "In habeas, equity recognizes that 'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" *McCleskey v. Zant,* 499 U.S. 467, 490, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991) (quoting *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1962)).

Petitioner previously argued unsuccessfully that his original habeas counsel conducted a limited investigation of his case because former counsel was under no duty to conduct a thorough investigation under pre-*McCleskey* law. While the Court agreed that the standards for determining abuse of the writ changed to the detriment of petitioners, the Court found that this cannot support such an inference or justify the piece-meal presentation of claims. Petitioner was clearly on notice as to his obligations upon the filing of his petition. Rule 2(c) of the Rules Governing Section 2254 Cases provides, in part: "The petition ... shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge." Similarly, Rule 9(a) provides, in part: "A petition may be dismissed if it appears the state ... has been prejudiced in its ability to respond to the petition by delay

---

10. The Court also finds unpersuasive Petitioner's attempt to distinguish *Bonin.*

11. The Court notes that the evidence now presented does not, in this Court's view, render the state court's findings unsupported or inadequate.

12. The Court has included only those factors applicable to this case.

in its filing." These provisions inform petitioners that they must present all of the known grounds for relief and that a failure to present alleged grounds for relief in a timely fashion may result in dismissal of those claims.

Second, there is evidence in the record that Petitioner's former counsel, deposed in 1983, already had trouble remembering or justifying some of his actions due to the passage of time. To allow Petitioner to add new allegations of error would clearly prejudice Respondents. The Court finds that Respondents' ability to enforce Arizona's laws would be unfairly restricted by any amendment of Petitioner's petition 10 years after commencement of his federal habeas proceeding and 14 years after obtaining his conviction.

■ Finally, it is likely that amendment of Petitioner's petition would be effectively futile and result in excessive and undue delay in the resolution of these proceedings. *See Bonin v. Vasquez,* 807 F.Supp. 586, 587 (C.D.Cal.1992). Petitioner disputes this possibility, however, and raises several unpersuasive arguments as to why his claims would not be precluded, including that the mitigation evidence discussed is "newly discovered." The issue before the Court, however, involves a narrow question, i.e., the effect of Petitioner's failure to include these claims in two prior Rule 32 proceedings or his direct appeal.

■ First, as Petitioner notes, for a state rule to preclude an on-the-merits review in any forum, the state rule must be both independent of federal law and also "adequate". To be "adequate" a state rule must be regularly or consistently applied. *See Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (State procedural rules must be regularly or consistently applied before they are entitled to deference in federal court).

■ The Ninth Circuit Court of Appeals has implicitly found that Rule 32 has been consistently applied. *See Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992) ("We also reject Carriger's argument that Arizona's reliance on his procedural default was so un-

predictable and irregular that it does not provide an adequate ground for disposal of his claims."). Moreover, even if one or two cases failed to apply Rule 32 appropriately, such infrequent and rare exceptions should not be deemed a violation of consistent practices. *See Dugger. v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989).

■ Petitioner also relies upon *Beam v. Paskett,* 3 F.3d 1301, 1306–07 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994), and argues that Arizona's mandatory direct appeal and search of the record for "fundamental error" obviates the possibility that any claim is defaulted. Petitioner contends that because Arizona has defined fundamental error as federal constitutional error, there is no independent and adequate state ground to support a finding of procedural default. The *Beam* panel, however, distinguish those states whose statutory procedures are more accurately considered automatic appeals rather than mandatory reviews. *Id.* at 1307 n. 3.

Arizona provides for automatic, non-waivable appeals in all cases "[w]hen a defendant has been sentenced to death...." Ariz. R.Crim.P. 31.2(b). This process may not be circumvented. *State v. Brewer,* 170 Ariz. 486, 494, 826 P.2d 783, 791 (1992) ("the propriety of the death penalty is not for the defendant or the trial court alone to decide."). However, the Arizona statute, unlike its Idaho counterpart analyzed in *Creech,* does not obligate the court to consider certain potential errors nor does it provide advance notice that its mandatory review constitutes an implicit rejection of specific claims. While some claims cannot be defaulted in Idaho, that conclusion is not contemplated under Arizona's statutory scheme.

Moreover, Petitioner's argument, if accepted, would produce a decidedly odd result running counter to public policy. Brought to its logical conclusion, Petitioner's contention would eliminate the utility of Arizona's procedural rules and virtually eradicate the doctrine of procedural default in Arizona. The Court, therefore, finds Petitioner's contention

unpersuasive and amendment of the petition futile.

Accordingly, Petitioner is denied leave to amend his petition.

### C. *Other Matters:*

Petitioner also asserts that this Court must review an additional challenge with respect to the manner in which the trial court in this case considered mitigating evidence. This specific claims was not, however, raised in the petition. Rather the only claim relating to this issue was raised in the context of an ineffective assistance of counsel claim. Although not raised in the petition, the Court will address the substance of the claim because of the related challenge to counsel's performance at sentencing.

Petitioner contends that the trial court failed to give sufficient consideration to mitigating evidence related to his intoxication at the time of the offense, his cooperation with the police, his wife's miscarriages, and the medical evidence involving numerous instances of head trauma. Respondents oppose Petitioner's request for habeas relief contending that the trial court provided all of the review and consideration constitutionally required. It should also be noted that most of the evidence Petitioner now wishes to present was contained in the presentence report, albeit in less detail, which the trial court used solely for mitigating circumstances. *See* Presentence Report, Exhibit B, Doc. # 70.

### 1. APPLICABLE LAW

■ This Court has long recognized the principle that all mitigating evidence is relevant to the sentencing calculus performed in a death penalty proceeding. *See Richmond v. Cardwell,* 450 F.Supp. 519 (D.Ariz.1978) (finding, prior to *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that a portion of Arizona's former sentencing statute violated the Eighth Amendment by unduly restricting the sentencing court's ability to consider mitigating evidence); *See also Knapp v. Cardwell,* 513 F.Supp. 4 (D.Ariz. 1980), *aff'd.* 667 F.2d 1253 (9th Cir.1982), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982) (finding constitutional Arizona's subsequent judicial construction of the statute which allowed for consideration of any mitigating evidence).

The United States Supreme Court requires that a sentencer must be *allowed* to consider *any* relevant evidence offered by a capital defendant in support of a sentence less than death. In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court granted certiorari to determine whether Ohio's sentencing statute violated the Eighth and Fourteenth Amendments by limiting the sentencer's ability to consider mitigating circumstances. In determining that Lockett's sentence was invalid the Supreme Court concluded:

> The eighth and fourteenth amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

*Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964 (emphasis in original).

Subsequently in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Court applied the rule announced in *Lockett* and found error in a trial court's refusal to consider, as a matter of law, a defendant's history of emotional disturbances. Specifically, the Court announced the broad rule that "state courts must consider *all* relevant mitigating evidence" that the defendant offers. *Eddings,* 455 U.S. at 117, 102 S.Ct. at 878 (emphasis added). Thus, *Eddings* requires *consideration* of *any* mitigating evidence proffered pursuant to *Lockett. See also Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1670, 90 L.Ed.2d 1 (1986) (Same). The sentencer is not, however, required to find the proffered evidence mitigating, nor must the sentencer accord the evidence the weight a defendant believes is appropriate. *Eddings,* 455 U.S. at 114–15, 117, 102 S.Ct. at 877, 878.

### 2. ANALYSIS

■ Petitioner contends that consistent with Supreme Court authority, the Ninth Circuit has held that a sentencer must weigh the totality of the mitigating evidence in relation to the aggravating factor(s). *Smith v.*

*McCormick,* 914 F.2d 1153, 1168–69 (9th Cir. 1990); *See also Jeffers v. Lewis,* 5 F.3d 1199, 1204 (9th Cir.1992) (Same), *reh'g en banc granted,* 22 F.3d 199 (9th Cir.1994). Petitioner asserts, however, that the trial court must *specifically* state that it considered all non-statutory mitigating evidence.

In *Smith v. McCormick,* the Ninth Circuit reviewed and reversed a district court's denial of habeas relief. In reviewing alleged sentencing errors, the Court of Appeals found that in Smith's case, both the Montana trial and supreme courts weighed each of Smith's proffered mitigating circumstances individually against the aggravating factors. *Smith v. McCormick,* 914 F.2d at 1164. The key aspect of the decision in *Smith,* however, is that both the trial court and the Montana Supreme Court specifically *rejected* proffered mitigating evidence because it failed to reach a particular level of credibility as opposed to considering the factor as merely less weighty. *Id.* at 1167.

Resolution of this claim, however, requires consideration and application of several Ninth Circuit decisions. *Smith v. McCormick* and *Jeffers v. Lewis* require the sentencing court to *consider* the totality of the mitigating evidence and weigh it against the aggravating factor(s) found. Yet these opinions provide little guidance as to what constitutes adequate indicia that the proper weighing occurred. Although a specific finding would arguably suffice, it has been held that a sentencing court's failure to discuss each mitigating factor that is proffered and its effect on the court's sentencing determination does not constitute a denial of due process. *Clark v. Ricketts,* 958 F.2d 851, 858 (9th Cir.1991).

In *Clark,* the Court of Appeals held that "[t]he due process clause does not require that the sentencing court exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant." *Id.* at 858. Further, the Court of Appeals made clear that

its holding in *Smith* did not require the Court to conduct an on-the-record discussion of each mitigating factor and that the sentencing court's findings must be reviewed in light of the record as a whole. *Clark,* 958 F.2d at 858 n. 5 & 859; *See also Parker v. Dugger,* 498 U.S. 308, 314, 111 S.Ct. 731, 735, 112 L.Ed.2d 812 (1991) (statement by sentencing court that it considered all mitigating evidence sufficient to support finding); *Tinsley v. Borg,* 895 F.2d 520, 525 (9th Cir.1990) (in post-trial hearing factual determination may be implied by actions taken by court).

In Petitioner's case neither the trial court nor the Arizona Supreme Court wholly rejected any evidence. The sentencing court specifically noted that it considered whether Petitioner established any mitigating circumstances pursuant to 13–703(G) "and as allowed in State of Arizona versus *Watson.*" *See* (R.T. of 11/10/80, at pg. 15). *Watson* clearly authorized consideration of any and all mitigation evidence. The trial court also noted that it reviewed other testimony and statements pursuant to Petitioner's request.

The Court specifically noted that there was conflicting evidence regarding whether Petitioner was intoxicated. After evaluating the evidence the court found that "there is no evidence, in the Court's opinion, to show that the state of the defendant's intoxication was at a level where his capacity to appreciate the wrongfulness of his conduct or to conform his conduct.... was significantly impaired." *Id.* at pg. 20. These findings demonstrate that the sentencing court clearly considered the evidence, discussed it, did not reject it in toto, and merely found it of minimal import.

The Court finds that the trial court's sentencing findings satisfy the requirement that it give a " 'reasoned *moral* response to [Petitioner's] background, character, *and* crime.' " *Smith,* 914 F.2d at 1168 (quoting *Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989)). Accordingly, Petitioner would not be entitled to relief on this claim.[13]

---

13. In addition to finding that the trial court properly weighed the evidence in question the Court notes for purposes of clarification that,

pursuant to *Lewis v. Jeffers,* the evidence supports a finding that the combined weight of the

Based upon the discussion above,

**IT IS HEREBY ORDERED** denying Petitioner's petition filed September 24, 1984, and reinstating the Court's prior judgment to the extent it is consistent with this order and the Court's order of October 1, 1993 [**file doc. no. 82**].

**IT IS FURTHER ORDERED** denying Petitioner's motion for summary judgment [**file doc. no. 71–1**].

**IT IS FURTHER ORDERED** granting Respondents' motion for summary judgment [**file doc. no. 76–1**].

**IT IS FURTHER ORDERED** denying Petitioner's motion for an evidentiary hearing and/or leave to amend the petition [**file doc. nos. 88–1, 88–2**].

**IT IS FURTHER ORDERED** vacating the stay of execution previously imposed by this Court.

**IT IS FURTHER ORDERED** denying as moot any other motion currently pending.

### JUDGMENT

This action came on for consideration before the Court, the Honorable C.A. Muecke, United States District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered.

**IT IS ORDERED AND ADJUDGED** that the Court having granted the Motion for Summary Judgment by Respondents and denied the Cross–Motion for Summary Judgment by Petitioner, the Petitioner's Petition for Writ of Habeas Corpus is denied and the stay of execution previously imposed by this Court is vacated.

mitigating evidence does not outweigh the evidence in aggravation.