916 P.2d 1035

**STATE of Arizona, Appellee,**

v.

**Luis Morine MATA, Appellant.**

**No. CR–77–4104–AP/PC [4101].**

Supreme Court of Arizona,
En Banc.

May 9, 1996.

Grant Woods by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Crane McClennen, Assistant Attorney General and Jack Roberts, Assistant Attorney General, Phoenix, for Appellee.

Stompoly, Stroud, Giddings & Glicksman, P.C. by Elliot A. Glicksman, David L. Horley, Tucson and Arizona Capital Representation Project by Denise I. Young, Tempe, for Appellant.

Brown & Bain by Michael W. Patten and Charles C. Van Cott, Phoenix, for Amicus Curiae Jose Jesus Ceja.

MOELLER, Justice.

### THE PRESENT PROCEEDINGS

In 1977, defendant Luis Mata was convicted of the first degree murder of Debra Lopez and sentenced to death. After protracted litigation in state and federal courts, this court issued a warrant scheduling Mata's execution for July 12, 1995. On June 23, 1995, Mata moved this court to stay the execution. Although the motion presented numerous arguments, the court concluded that only two of the legal questions warranted a temporary stay in order to provide adequate opportunity to fully brief, argue, and decide them. Those two issues are:

1. Whether principles of federal or state constitutional law require that defendants who were sentenced to death prior to this court's opinion in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444 [77 L.Ed.2d 1327] (1983), be resentenced if the sentencing judge used the statutory aggravating circumstance of "especially heinous, cruel or depraved" (now appearing at A.R.S. § 13–703(F)(6)), in whole or in part, to death-qualify the

defendant. *See, e.g., Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528 [121 L.Ed.2d 411] (1992); *State v. Richmond*, 180 Ariz. 573, 886 P.2d 1329 (1994); *State v. King*, 180 Ariz. 268, 883 P.2d 1024 (1994); *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092 [111 L.Ed.2d 606] (1990); and *Gretzler*, 135 Ariz. 42, 659 P.2d 1. A sub-issue is whether a finding of cruelty should be treated differently in this respect than findings of heinousness or depravity.

2. Whether defendant is entitled to any relief by reason of his present claim, asserted in his fourth Rule 32 petition for post-conviction relief, that he did not receive effective assistance of counsel at his second sentencing in 1978.

With respect to the first issue, we conclude that defendant need not be resentenced. We conclude that the second issue is precluded. Because defendant is entitled to no relief on the two issues that led us to issue a temporary stay, we now quash the temporary stay and will, upon motion of the state, issue another warrant of execution.

## FACTS AND PROCEDURAL HISTORY

Mata was convicted of first degree murder and sentenced to death in 1977. On appeal, pursuant to the requirements of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), this court remanded for resentencing to assure that his sentencing was not tainted by any limitations on mitigating evidence. He was again sentenced to death and again appealed. While his appeal was pending, Mata filed his first petition for post-conviction relief (PCR). That PCR related to alleged transcript errors, and this court stayed the second appeal while the trial court made findings of fact. In affirming the conviction and sentence, we summarized the facts of the case as follows:

In the early morning hours of March 11, 1977, police found the body of Debra Lee Lopez at the side of a road in West Phoenix. The twenty-one year old woman had died as the result of her throat being sev-ered through to the spine. The defendant and his brother Alonzo Mata were arrested and charged with first degree murder.

Testimony at trial revealed the following account of the events leading up to the victim's death. After an evening out, the Mata brothers were joined by the victim and George Castro Harrange, both acquaintances of the Matas. All four left a neighborhood bar, walked to the Mata's nearby apartment, and began watching television. According to Castro, the victim got up to leave after about ten minutes, at which point Luis grabbed her by the hair and announced that they were going to rape her. Thereafter, the Mata brothers beat the victim, Luis with his fists and Alonzo with a rifle, and successively raped her. At one point, Luis and the victim fell off the bed, whereupon Luis picked her up by the hair and beat her head against the cement floor. The victim soon regained consciousness and attempted to run away after Luis announced that they were going to kill her and throw her in the river. A neighbor testified that he heard terrified screams, that he saw Alonzo throw a rifle inside a car, and that another man carried either a person or a box to the car and deposited it in the front seat. The car departed. According to the confessions of the brothers, after the beatings and rapes, the men drove the then unconscious victim away from the apartment, and Luis killed her at the side of the road by cutting her throat with a knife.

*State v. Mata*, 125 Ariz. 233, 236, 609 P.2d 48, 51 (1980). The United States Supreme Court denied certiorari. 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980) (footnote omitted).

After a class action challenge to the Arizona death penalty statute failed in the federal courts, *Knapp v. Cardwell*, 513 F.Supp. 4 (D.Ariz.1980), *aff'd*, 667 F.2d 1253 (9th Cir.), *cert. denied*, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982), this court set an execution date in 1983. New counsel for Mata filed a second PCR and obtained a stay of execution from the trial court. A judge who was not the trial judge heard and denied the second PCR. Because it should have been

heard by the trial judge, who was available, we remanded the second PCR to the trial judge pursuant to *State ex rel. Corbin v. Superior Court (Evans),* 138 Ariz. 500, 675 P.2d 1319 (1984). After a hearing, the trial judge denied relief on the second PCR and denied a motion for rehearing.

In late 1984, this court denied review of the second PCR and set a second execution date for early 1985. New counsel then filed a preliminary petition for habeas corpus in the federal district court and obtained a stay of execution. Its resolution, adverse to defendant, did not become final until the United States Supreme Court denied certiorari a decade later in 1994. *Mata v. Ricketts,* —— U.S. ——, 115 S.Ct. 436, 130 L.Ed.2d 348 (1994). The Ninth Circuit thereafter denied Mata's motion to stay the mandate.

Meanwhile, in September 1992, Mata, again through new counsel, filed a third PCR in state court, contending primarily that he did not receive effective assistance of counsel from his original trial counsel at the resentencing. The trial court held the claim to be precluded and alternatively found the claim lacked merit. This court denied review, and the United States Supreme Court denied certiorari on October 31, 1994. *Mata v. Arizona,* —— U.S. ——, 115 S.Ct. 436, 130 L.Ed.2d 357 (1994).

In February 1995, current defense counsel filed a fourth PCR in the trial court, which remains pending. Shortly before the third scheduled execution date of July 12, 1995, defendant moved this court for a stay of execution with the results outlined above.

## DISCUSSION

**I. Do principles of federal or state constitutional law require that defendants sentenced to death prior to this court's opinion in *State v. Gretzler* be resentenced if the statutory aggravating circumstance of "especially heinous, cruel or depraved" was used to death-qualify the defendant?**

The trial judge at Mata's second sentencing found Mata to be "death-qualified" under Arizona's death penalty statute by reason of the existence of two separate statutory ag-

gravating factors. One aggravator was that he had committed the murder in an especially heinous, cruel, or depraved manner within the meaning of A.R.S. § 13–703(F)(6). This factual finding was made in 1978, five years before this court issued its opinion in *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

Defendant contends that the statutory terms contained in § 13–703(F)(6) were not sufficiently narrowed so as to pass constitutional muster until our 1983 opinion in *Gretzler.* Defendant relies primarily upon the United States Supreme Court case of *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and a footnote in this court's recent opinion in *State v. Richmond,* 180 Ariz. 573, 886 P.2d 1329 (1994). The footnote, referring to *Jeffers* and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), stated that the (F)(6) factor "had not yet been adequately narrowed pursuant to *Godfrey* . . . at the time of [Richmond's] second sentencing. This did not occur until *State v. Gretzler. See Lewis v. Jeffers. . . ."* *Richmond,* 180 Ariz. at 576 n. 1, 886 P.2d at 1332 n. 1.

We are now called upon to determine whether, in light of the *Richmond* footnote we are, as Mata contends, required to remand his case for a third sentencing. We conclude that we are not.

### A. The History of the (F)(6) Factor in This Case

The trial court found the murder of Debra Lopez to have been committed in an especially heinous, cruel, or depraved manner at the first sentencing. The trial court again found the (F)(6) factor at the second sentencing. This court also found the (F)(6) factor on direct appeal. In *Gretzler,* we cited *Mata* as a proper application of the (F)(6) factor. 135 Ariz. at 51, 659 P.2d at 10. In defendant's second PCR, which was post-*Gretzler,* he argued that (F)(6) was unconstitutionally vague and was applied arbitrarily. The trial court denied relief on the merits of that argument, and this court denied review of that order.

In his third PCR, defendant argued that *Richmond v. Lewis*, 506 U.S. 40, 47–49, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992), was new law holding that the (F)(6) circumstance was unconstitutionally vague prior to *Gretzler*. The trial court held that argument precluded because the trial court had resolved the same issue on the merits in 1984, after *Gretzler*. We denied review of that ruling.

The state argues that defendant's present argument, now being advanced for the third time, is precluded. Notwithstanding the tortured history of this case, we granted a temporary stay to resolve the issue on the merits because it requires resolution, not only in this case, but in other cases likely to come before this court.

B. Was the (F)(6) aggravating circumstance adequately narrowed prior to *Gretzler?*

 The United States Constitution demands that imposition of a death sentence be based upon some principled distinction. *See Jeffers*, 497 U.S. at 774, 110 S.Ct. at 3099 ("The Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be … wantonly and … freakishly imposed.") (citing *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). In order for a capital sentencing scheme to pass constitutional scrutiny, "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg*, 428 U.S. at 189, 96 S.Ct. at 2932. "A state's definitions of its aggravating circumstances—those circumstances that make a criminal defendant 'eligible' for the death penalty—therefore play a significant role in channeling the sentencer's discretion." *Jeffers*, 497 U.S. at 774, 110 S.Ct. at 3099. If the bare language of an aggravating circumstance does not provide the sentencer with sufficient direction, the use of the factor may still survive constitutional scrutiny if the state appellate court has construed the term so as to adequately channel the

sentencer's discretion. *Id.* at 775, 110 S.Ct. at 3099.

 Although the (F)(6) aggravating factor is vague on its face, this court has construed it so as to give the sentencer adequate guidance in making the decision whether to inflict a sentence of death. *See Walton v. Arizona*, 497 U.S. 639, 655, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990); *Jeffers*, 497 U.S. at 777–78, 110 S.Ct. at 3100–01 ("*Walton* therefore squarely forecloses any argument that Arizona's subsection (F)(6) aggravating circumstance, as construed by the Arizona Supreme Court, fails to channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' ") (internal quotation omitted). The question in this case is whether such a construction was provided by this court prior to our decision in *Gretzler.*

Mata points to the language of the first footnote in *Richmond*, 180 Ariz. at 576, 886 P.2d at 1332, in support of his argument that § 13–703(F)(6) was not constitutionally narrowed until *Gretzler*. Because he was sentenced prior to *Gretzler*, Mata maintains that his sentence is invalid. We reject this argument, and instead find our footnote in *Richmond* to be dicta which relies on an erroneous interpretation of Arizona and United States Supreme Court precedent.

1. Arizona law concerning (F)(6)

*Gretzler* did not provide a new, narrowing interpretation of the (F)(6) factor. Instead, in *Gretzler* we rejected the claim that (F)(6) had not already been narrowed. We noted that we had "already considered an identical claim in another case and have held this aggravating circumstance was not defined in an unconstitutionally broad or vague manner," and that we had "also twice pointed out that the United States Supreme Court, in *Proffitt v. Florida*, [428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913] has approved of 'strikingly similar terms' in another state's capital sentencing statute." 135 Ariz. at 50, 659 P.2d at 9 ("We believe that the statutory phrase 'especially heinous, cruel or depraved' has been construed in a constitutionally nar-

row fashion, and has been properly applied in individual cases.") (citing *State v. Ortiz*, 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982); *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *State v. Richmond*, 114 Ariz. 186, 197, 560 P.2d 41, 52 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1976)).

*Gretzler* did not present a new, narrower interpretation of the (F)(6) factor, but simply a digest of the previously legitimate applications of the factor. When we discussed the meaning of "especially heinous, cruel or depraved," we first noted that *State v. Knapp* had defined those terms in the following manner:

heinous: hatefully or shockingly evil; grossly bad.

cruel: disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic.

depraved: marked by debasement, corruption, perversion or deterioration.

*Gretzler*, 135 Ariz. at 51, 659 P.2d at 10 (citing *Knapp*, 114 Ariz. at 543, 562 P.2d at 716 (quoting Webster's Third New International Dictionary)). Our decision in *Gretzler* points out that "[w]e have explained on numerous occasions that cruelty involves the pain and distress visited upon the victims, and that heinous and depraved go to the mental state and attitude of the perpetrator as reflected in his words and actions." *Id.* (citing *State v. Poland*, 132 Ariz. 269, 285, 645 P.2d 784, 800 (1982), *aff'd*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *State v. Tison*, 129 Ariz. 526, 543, 633 P.2d 335, 352 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Bishop*, 127 Ariz. 531, 534, 622 P.2d 478, 481 (1980); *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); *State v. Ceja*, 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980); *State v. Lujan*, 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979)).

### a. Cruelty

In *Gretzler*, we held that each of the three elements (heinous, cruel, or depraved) could, standing alone, constitute an aggravating circumstance, and noted that:

Cruelty **has been specifically defined** to involve the infliction of pain on the victims .... **We have also stated** that our concept of cruelty involves not only physical pain, but also mental distress visited upon the victims .... Where, however, there is no evidence that the victims actually suffered physical or mental pain prior to death, or where the evidence presented is inconclusive, **we have held** that cruelty is not shown.

135 Ariz. at 51, 659 P.2d at 10 (citations omitted) (emphasis added). When we listed the concepts which narrowed the cruelty element, we did so exclusively with reference to previous opinions. We did not announce a mathematical formula in *Gretzler*, nor have we since, because, as the United States Supreme Court has recognized, "definition of an aggravating factor of this nature is not susceptible of mathematical precision...." *Walton*, 497 U.S. at 655, 110 S.Ct. at 3058. Because it is an impossible task to craft a formula into which a judge might insert facts to determine if a defendant is death-eligible, we must content ourselves with identifying types of murders that meet the definition of especially heinous, cruel, or depraved.

For example, we cited with approval *State v. Knapp*, in which the sentencing judge properly held that the murder was an especially cruel one. *See Gretzler*, 135 Ariz. at 51, 659 P.2d at 10. The trial judge found that Knapp's act of murdering his infant daughters by burning them alive met the definition of cruel (disposed to inflict pain). *Knapp*, 114 Ariz. at 543, 562 P.2d at 716. In upholding the finding, the appellate court noted that "[w]e can hardly think of a more ghastly death than this for anyone." *Id.* Prior to *Gretzler*, sentencing judges could rely on *Knapp*'s application of the definition of cruelty ("disposed to inflict pain esp[ecially] in a wanton, insensate or vindictive manner: sadistic") to the facts in that case; "ghastly death[s]."

Since *Knapp*, but prior to *Gretzler*, our decisions demonstrate that this narrowing definition has been applied consistently. In *Ceja*, we held that cruelty had not been shown where the victims died upon being shot. 126 Ariz. at 37–39, 612 P.2d at 493–95. Likewise, in *Clark*, we held that there was "no evidence that any of the victims suffered any pain." 126 Ariz. at 436, 616 P.2d at 896. In *Bishop*, we held that there was insufficient evidence to establish cruelty where "the medical expert was of the opinion that the victim was not conscious of pain." 127 Ariz. at 534, 622 P.2d at 481. However, in *Tison*, we held that although the evidence did not show pain and suffering (except for evidence showing that one of the victims bled to death), the sentencing judge acted reasonably in concluding that the murder was cruel where "the victims must have experienced a great degree of mental pain by being moved from the highway at gunpoint in apprehension of the possibility of eventually being murdered and through witnessing the commission of the murders on the other family members." 129 Ariz. at 543, 633 P.2d at 352. These cases demonstrate that Arizona courts have consistently applied a narrowing definition of "cruel" prior to our decision in *Gretzler*. *See* 135 Ariz. at 51, 659 P.2d at 10.[1] Thus, even if Mata's argument on heinousness and depravity had merit, which we conclude it does not, he would not be entitled to be resentenced because his murder was independently, and correctly, found to be especially cruel, and that factor was adequately defined pre-*Gretzler*.

b. Heinous or Depraved

As with the cruelty element, in *Gretzler* this court discussed the meaning of "heinous or depraved" in terms of our prior decisions:

> [T]he statutory concepts of heinous and depraved involve a killer's vile state of mind at the time of the murder, as evidenced by the killer's actions. *Our cases have suggested specific factors which lead to a finding of heinousness or depravity.* The first such factor is the apparent relishing of the murder by the killer. . . . *Another factor we have found* to demonstrate a heinous or depraved state of mind is the infliction of gratuitous violence on the victim. . . . Closely related to the above two factors, and also demonstrating a heinous or depraved state of mind, is the needless mutilation of the victim. . . . *Other factors considered by this court* are the senselessness of the crime, and the helplessness of the victim. . . . Where no circumstances, *such as the specific factors discussed above,* separate the crime from the "norm" of first degree murders, we will reverse a finding that the crime was committed in an "especially heinous, cruel or depraved manner."

135 Ariz. at 51–53, 659 P.2d at 10–12 (citations omitted) (emphasis added). At most, *Gretzler* supplied names for the already existing categories of especially heinous or depraved murders.

Each of the five categories we labeled in *Gretzler* were adopted wholesale from prior decisions of this court. "The first such factor is the apparent relishing of the murder by the killer." 135 Ariz. at 52, 659 P.2d at 11. We based our understanding of "relishing of the murder" in *Gretzler* on our prior decisions in *Clark* and *Bishop*. 135 Ariz. at 52, 659 P.2d at 11. In *Clark*, we upheld a finding of depravity where the defendant told someone else, "You should have seen Charley when I hit him with those cutters," and the defendant kept a bullet as a souvenir of his crime. 126 Ariz. at 436–37, 616 P.2d at 894–95. In *State v. Bishop*, we affirmed the trial judge's finding of heinousness and depravity because the defendant beat the victim in the head with a hammer, stole his watch, wallet

---

1. The other cases to which *Gretzler* referred in its discussion of the meaning of "cruel" are *State v. Mata* (this case), *State v. Steelman*, and *State v. Ortiz*. Those cases similarly support our conclusion. In *Mata*, a cruelty finding was appropriate where the defendant beat and raped the victim before killing her. *See* 125 Ariz. 233, 236, 242, 609 P.2d 48, 51, 57, *cert. denied*, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980). In *Steel-*

*man*, we based our (F)(6) analysis solely upon heinousness. *See* 126 Ariz. 19, 26–27, 612 P.2d 475, 482–83, *cert. denied*, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980). In *Ortiz*, we held that cruelty had not been demonstrated because "[t]he state did not prove beyond a reasonable doubt that the victim suffered during commission of the murder." 131 Ariz. at 210, 639 P.2d at 1035.

and shoes, tied the still-living victim's legs together, took the victim to a mine shaft, causing him to fall in, threw rocks on him, and, as he drove away, waved and said, "Good-bye, Norman. I hope we never see you again." 127 Ariz. at 534, 622 P.2d at 481.

*Gretzler* did not suggest some new calculus used to divine the presence of "relishing" in *Bishop* or *Clark*. We simply presented the facts of those cases, held that the facts indicated the killer had "relished" his murders, and held that this "relishing" was indicative of heinousness or depravity. *See* 135 Ariz. at 52, 659 P.2d at 11. Prior to *Gretzler,* trial judges had just as much guidance on the kinds of murders which indicate "relishing" as they did after that case; *Gretzler* simply provided judges with the label "relish."

Another factor for which we provided a label in *Gretzler* was the infliction of gratuitous violence on the victim. *See Gretzler,* 135 Ariz. at 52, 659 P.2d at 11 (citing *State v. Ceja* for the proposition that infliction of gratuitous violence on the victim is a factor "we have found to demonstrate a heinous or depraved state of mind...."). However, we had already announced in *Ceja* that "defendant's conduct in continuing his barrage of violence, inflicting wounds and abusing his victims, beyond the point necessary to fulfill his plan to steal, beyond even the point necessary to kill, is such an additional circumstance of a ... depraved nature so as to set it apart from the 'usual or the norm'" *Gretzler,* 135 Ariz. at 52, 659 P.2d at 11 (citing *Ceja,* 126 Ariz. at 40, 612 P.2d at 496). *Ceja,* like *Gretzler,* held that gratuitous violence was indicative of depravity; it simply described the factor in terms marginally different from the label "gratuitous." If a trial judge is adequately guided by the holding that "gratuitous violence" is indicative of depravity (e.g., *Gretzler*), then the judge's discretion is equally channelled by cases which indicate "unnecessary violence" is probative of depravity (e.g., *Ceja*).

The next factor for which we supplied a label in *Gretzler* was "needless mutilation of the victim." *See Gretzler,* 135 Ariz. at 52, 659 P.2d at 11 (citing *State v. Vickers,* 129 Ariz. 506, 515, 633 P.2d 315, 324 (1981), and *State v. Smith,* 131 Ariz. 29, 638 P.2d 696 (1981), as proof that needless mutilation of the victim is evidence of heinousness and depravity). Although we did not use the *Gretzler* label of "needless mutilation" in either *Vickers* or *Smith,* we did exhaustively describe the facts which, not coincidentally, involved very obvious instances of "needless mutilation," and then held those facts to be indicative of heinousness and depravity.

Finally, in *Gretzler* we mentioned two other factors to be considered in determining whether a murder was heinous or depraved: "the senselessness of the crime, and the helplessness of the victim." 135 Ariz. at 52, 659 P.2d at 11. However, neither of these factors were introduced in *Gretzler;* they were both spelled out in *Tison,* 129 Ariz. at 543, 633 P.2d at 352, upon which *Gretzler* relied:

> The senselessness of the murders, given the inability of the victims to thwart [their captors'] escape, especially in such an isolated area, and the fact that a young child, less than two years old, who posed no threat to the captors, was indiscriminately shot while in the arms of his mother, compels the conclusion that the actual slayers possessed a shockingly evil state of mind.

135 Ariz. at 52, 659 P.2d at 11. We pointed out in *Gretzler* that *Lujan,* 124 Ariz. at 373, 604 P.2d at 637, and *State v. Blazak,* 131 Ariz. 598, 604, 643 P.2d 694, 700, *cert. denied,* 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982), indicated that "[t]he mere existence of senselessness or helplessness of the victim, in isolation, need not always lead to a holding that the crime is heinous or depraved...." 135 Ariz. at 52–53, 659 P.2d at 11–12. However, after *Gretzler,* a trial judge, in deciding which senseless murders of helpless victims are especially heinous or depraved, has to rely on the same information which the judge had prior to *Gretzler;* the factual differences between *Tison, Ortiz,* and *Clark* on the one hand, and *Lujan* and *Blazak* on the other. *Gretzler* did not elaborate on this distinction, nor do we believe it should have. The United States Supreme Court made clear in *Walton* that justice cannot be reduced to a theorem; the trial judge will be presumed to apply narrowing case law to the facts. 497 U.S. at 655, 110 S.Ct. at 3058.

The *Gretzler* decision, however finely combed for narrowing language, provides no construction of the (F)(6) factor that was not plucked directly from prior decisions of this court, and in this respect the decision was purely appellative. We find untenable the notion that *Gretzler*, by listing decisions applying the (F)(6) factor and attaching new labels to previous holdings, somehow created a new, constitutional version of (F)(6). If that had been the case, we could not have affirmed Gretzler's sentence. Had *Gretzler* announced a new, narrowing interpretation that did not exist prior to our decision in that case, as defendant argues here, then Gretzler himself would have had to be resentenced. Such was not the case. Because *Gretzler* merely catalogued extant case law, it does not rise to the watershed status defendant now attributes to it.

### 2. The *Richmond* footnote

Our first footnote in *Richmond* stated that the (F)(6) factor "had not yet been adequately narrowed pursuant to *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), at the time of defendant's second sentencing. This did not occur until *State v. Gretzler*." 180 Ariz. at 576 n. 1, 886 P.2d at 1332 n. 1 (citation omitted). We now conclude this statement is incorrect for two reasons. First, *Godfrey* had nothing to do with narrowing an unconstitutionally vague aggravating circumstance. In *Godfrey*, the Court analyzed a constitutionally narrowed factor. 446 U.S. at 431–33, 100 S.Ct. at 1766–67. The issue in *Godfrey* was whether the Georgia court had improperly applied the factor. *See Jeffers*, 497 U.S. at 775, 110 S.Ct. at 3099 ("In *Godfrey v. Georgia*, however, a plurality of the Court held that although the Georgia Supreme Court had adopted a narrowing construction of Georgia's subsection (b)(7) aggravating circumstance, the death sentence at issue could not stand because no evidence existed that the state courts had applied the narrowing construction to the facts of that case.") Thus, *Godfrey* imposed no duty upon this court to correct the (F)(6) factor, as the *Richmond* footnote suggests.

Second, the footnote is incorrect in stating that *Gretzler* accomplished a narrowing at all. If *Gretzler* had narrowed (F)(6), it would have done so pursuant to *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), not *Godfrey*, because *Gregg* involved the use of a vague factor, while *Godfrey* did not. However, the *Gretzler* opinion explicitly held that neither the *Gregg* problem (application of a vague factor) nor the *Godfrey* problem (wrongful application of a properly narrowed factor) were at issue in *Gretzler*:

> First, a state's highest tribunal may fail to adopt a construction of its statute sufficiently narrow to make sentencing discretion "suitably directed and limited." *Gregg v. Georgia*. Secondly, the state tribunal may stray in an individual case from an otherwise constitutionally narrow construction. *See Godfrey v. Georgia* (reversing one individual application of Georgia's death penalty statute). Neither of these problems are present here. We believe that the statutory phrase "especially heinous, cruel or depraved" has been construed in a constitutionally narrow fashion, and has been properly applied in individual cases.

*Gretzler*, 135 Ariz. at 50, 659 P.2d at 9 (citations omitted).

### 3. Applicable federal law

Even if we adopt wholesale the interpretation of *Gretzler* provided in *Lewis v. Jeffers*, the lone case cited in the *Richmond* footnote as proof that the (F)(6) factor was not narrowed prior to *Gretzler*, that case does not support the proposition for which it is cited. In *Jeffers*, the United States Supreme Court reversed the decision of a divided panel of the Ninth Circuit Court of Appeals which had vacated Jeffers' "sentence on the ground that the 'especially heinous . . . or depraved' circumstance was unconstitutionally vague **as applied to him**." 497 U.S. at 772–73, 110 S.Ct. at 3098 (emphasis added). *Jeffers*, like *Godfrey*, did not involve the issue of whether (F)(6) was adequately narrowed. Instead, *Jeffers* involved the issue of whether the Ninth Circuit had acted properly in vacating Jeffers' sentence on the grounds that the adequately narrowed (F)(6) **had not been properly applied in that case.**

Moreover, in *Lewis v. Jeffers* the United States Supreme Court did not decide when the (F)(6) factor had been narrowed, but simply that it had been narrowed prior to the imposition of sentence in that case. *See* 497 U.S. at 777–78, 110 S.Ct. at 3100–01.[2] The Court relied on *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), as proof that Arizona has construed (F)(6) in a constitutionally sufficient manner. Nowhere in *Jeffers* did the Supreme Court announce that this narrowing had occurred in *Gretzler*. In fact, *Jeffers* cites *Gretzler* only once:

> In light of the Arizona Supreme Court's narrowing construction of the "especially heinous ... or depraved" aggravating circumstance, *see State v. Gretzler*, 135 Ariz. at 52–53, 659 P.2d, at 11–12 (listing factors), the Arizona Supreme Court could reasonably have concluded that respondent committed the murder in an "especially heinous ... or depraved manner."

497 U.S. at 784, 110 S.Ct. at 3104. Conspicuously, *Gretzler* was cited in *Jeffers* with regard to whether (F)(6) was adequately applied, not whether it was adequately narrowed. *Jeffers'* reference to *Gretzler* is consistent with our interpretation; *Gretzler* simply "listed factors."[3]

■ Nor does *Walton* support the conclusion that the (F)(6) factor was not narrowed until *Gretzler*. The Supreme Court in *Walton* distinguished Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance (found to be invalid in *Maynard v. Cartwright*, 486 U.S. 356, 363–64, 108 S.Ct.

1853, 1859, 100 L.Ed.2d 372 (1988)), and Georgia's "outrageously or wantonly vile, horrible or inhuman" circumstance (held to have been improperly applied in *Godfrey v. Georgia*, 446 U.S. 420, 432, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980)), from our (F)(6) aggravator "in two constitutionally significant respects." 497 U.S. at 653, 110 S.Ct. at 3057. We find the first of those considerations to be dispositive in this case:

> [I]n both *Maynard* and *Godfrey* the defendant was sentenced by a jury.... When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face. That is the import of our holdings in *Maynard* and *Godfrey*.... *[T]he logic of those cases has no place in the context of sentencing by a trial judge. Trial judges are presumed to know the law and to apply it in making their decisions. If the Arizona Supreme Court has narrowed the definition of the "especially heinous, cruel or depraved" aggravating circumstance, we presume that Arizona trial judges are applying the narrower definition.*

*Id.* (emphasis added). The sentencing judge, unlike a sentencing jury, has access to the reasoning provided in prior decisions of the state court. If those decisions have narrowed the factor, the judge is presumed to have applied the narrowing definitions.

*Gretzler* did not present sentencing judges with "new" guidance. It was simply an easy

---

**2.** The issue in *Jeffers* was whether we had properly applied the (F)(6) factor in that case. *See* 497 U.S. at 773, 110 S.Ct. at 3098. The *Jeffers* dissent decided to address the issue of whether (F)(6) had been narrowed prior to *Gretzler*. 497 U.S. at 787–98, 110 S.Ct. at 3106–12 (Blackmun, J., dissenting). The dissent's position was that (F)(6) was not only vague prior to *Gretzler*, but that the factor had not been narrowed by *Gretzler* or subsequent cases. *Id.* This position, rejected by the majority in *Jeffers* and *Walton*, is not binding law. A majority of the Supreme Court has held the factor to be constitutionally narrowed by the interpretations of this court. *Jeffers*, 497 U.S. at 784, 110 S.Ct. at 3104. Just as we are not bound by the conclusion of the *Jeffers* dissent as to whether (F)(6) has been narrowed, we also are not bound by the dissent's conclusion

that the issue of whether (F)(6) was narrowed prior to *Gretzler* was properly before the Court in *Jeffers*. We read the majority opinion as having rejected the dissent's conclusion.

**3.** Nor do we find persuasive the dissent's reliance upon the *Jeffers* dissent as an accurate statement of the issue in that case. Had the *Jeffers* dissent carried the day, we would rely on it. As it is, we are bound by the majority opinion and the language contained therein. In fact, we believe that today's dissent provides further support for our position. The *Jeffers* majority, confronted by the dissent's contention that it relied unduly upon *Gretzler* as the point at which (F)(6) was narrowed, failed even to mention that contention.

reference point; a digest of the previous application of the (F)(6) factor. Although *Gretzler* did attach labels to some prior decisions (e.g., relish), reiterate others (e.g., senselessness), and arrange them in discrete categories, *Walton* requires that we presume trial judges to have been capable of interpreting opinions of this court prior to our *Gretzler* synopsis.

At least one federal court directly addressing this issue has reached the same conclusion. In *Woratzeck v. Lewis*, the federal district court held that "[a] review of *Gretzler* discloses that the Arizona Supreme Court did little more than review and summarize its previous (F)(6) death penalty decisions." 863 F.Supp. 1079, 1086 (D.Ariz.1994). That court rejected the argument that *Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), stands for the proposition that the (F)(6) factor was not narrowed prior to *Gretzler*. "Rather, the Supreme Court decided only whether a proper appellate reweighing was done in light of the fact that a majority of the Arizona Supreme Court invalidated one aggravating circumstance applied in Richmond's case." *Id.*

We concur with the conclusion in *Woratzeck* that *Richmond v. Lewis* did not address the issue of whether (F)(6) was narrowed prior to *Gretzler*. In *Richmond*, the state did not address, on appeal, the constitutionality of the trial court's application of the aggravating circumstance but, instead, the constitutionality of the Supreme Court's application. The state did not need to prove the former when it could more easily prove the latter. We fail to see how *Richmond* can be interpreted as having resolved the issue given that the Court clearly stated: "Respondents do not argue that the factor had been narrowed adequately prior to petitioner's resentencing." 506 U.S. at 47, 113 S.Ct. at 534. The issue in this case, contrary to the assertion of the dissent, (*infra* at 2), was not before the court in *Richmond v. Lewis*.

In *Woratzeck*, the federal court held that the decisions prior to *Gretzler* provided adequate narrowing because in Arizona the find-

ing of aggravation is made by the trial judge, who requires less guidance than a jury. 863 F.Supp. at 1087 (citing *Walton v. Arizona*, 497 U.S. at 653, 110 S.Ct. at 3057). We concur with the approach in *Woratzeck*, cited favorably in *Gerlaugh v. Lewis*, 898 F.Supp. 1388, 1417 (D.Ariz.1995). Defendant is not entitled to resentencing merely because he was sentenced before *Gretzler*.

**II. Whether defendant is entitled to any relief by reason of his present claim, asserted in his fourth Rule 32 petition for post-conviction relief, that he did not receive effective assistance of counsel at his second sentencing in 1978.**

A. History of Defendant's Challenges to his Sentence

Some of defendant's arguments are presented with inadequate development of the history of this convoluted case. In order to explain the court's present rulings, we first present an historical record.

Defendant has been represented by at least nine lawyers over nearly two decades in the course of challenging his 1977 conviction for first degree murder and his subsequent sentence of death. At defendant's 1977 aggravation and mitigation hearing, defendant's trial counsel, Gary Wollschlager, presented all of the evidence in mitigation contained in the presentence report. Wollschlager also introduced the testimony of one of the jurors to prove that at least some jurors believed that Luis' brother Alonzo had actually committed the murder. At sentencing, the trial judge considered three psychiatric reports and a neurological report.[4] The judge then sentenced Luis Mata to death.

Defendant filed both an appeal and a petition for post-conviction relief through Wollschager in 1978 (although he was subsequently represented by new counsel (James Kemper) on this appeal). The PCR form included a warning, at the top of the form in large print, informing defendant that "FAILURE TO RAISE ANY KNOWN GROUND ... WILL BAR ITS BEING

---

4. The trial judge made clear in 1977 that he considered "all the matters submitted at the sen-

tence hearing ... which included by reference all the evidence presented at the trial."

RAISED LATER." The form included a list of issues, with boxes which defendant could check if he wished to raise the issue. Defendant did not check the boxes next to "[t]he denial of the constitutional right to ... a competent lawyer ...," or "the existence of newly-discovered material...." Neither the appeal nor the PCR raised any issue as to mitigating evidence or ineffective assistance of counsel.

■ At defendant's resentencing in November 1978, Wollschlager again represented defendant. Wollschlager presented no new evidence, but did refer the court to the arguments he previously made concerning defendant's age, background, lesser mental abilities, impairment due to intoxication at the time of the crime, heat of passion, lack of prior violent felonies, cooperation with the police, and the testimony of Luis' sisters (including Grace Castrejon).[5]

After considering all mitigating evidence presented by defendant, including a supplementary presentence report, and after giving Luis Mata the opportunity to address the court (which he declined), the trial court again sentenced Mata to death. The trial court specifically remarked on defendant's claimed mitigating factors of age, lack of intellect, intoxication, heat of passion, provocation, no prior violent crimes, and cooperation with police, and found that no mitigating factors existed.

Defendant filed his second petition for post-conviction relief in 1983. He was represented on this petition by attorneys Elliot Glicksman and William Walker. At this time, counsel for defendant again signed a form warning that claims not raised would be

barred and including boxes to check next to potential arguments. Though he checked six of the issues, defendant again chose not to raise "[t]he denial of the constitutional right to ... a competent lawyer ...," or "the existence of newly-discovered material...."

One of the claims raised by defendant in his second PCR was the voluntariness of his confession. The state responded that this claim was precluded. Defendant replied that if it was precluded, it was due to the failure of appellate counsel to represent him effectively. Thus, defendant first raised the claim of ineffective assistance of counsel almost five years after his second sentencing in reply to the state's response to defendant's voluntariness claim in his second PCR.

■ In June 1983, defendant filed his supplemental Rule 32 petition, which raised fifteen sentencing issues. Included in these issues were claims that the sentencing court failed to consider intoxication, lack of education, and lack of specific intent to kill as mitigating evidence. The trial judge, in denying relief on the 1983 PCR, rejected defendant's arguments both as to ineffective assistance and as to mitigation. The trial judge noted that:

> [T]he court finds no evidence presented that Luis Mata was represented on an appellate level in any way which failed to meet the *State v. Watson* ... requirement. In fact, the evidence appears quite to the contrary. This court would not second guess appellate counsel's strategy of raising only the issues he believed had a reasonable chance of success, rather than

---

5. At oral argument on the present motion to stay, defendant complains of the trial judge's statement made while ruling on defendant's third PCR in 1993, that he considered testimony from defendant's sisters at sentencing in 1977 and resentencing in 1978. Neither defendant's motion to stay itself nor defendant's supplemental brief referred to this statement. Defendant for the first time contends, at oral argument, that the statement shows that the trial judge mixed up the two brothers. The record shows less than present counsel contends. At the time of the sentencing, defendant's counsel specifically asked the trial judge to consider the testimony of the sisters, including Grace Castrejon. Though it lacked value as mitigation, the trial judge dutiful-

ly mentioned in his order the testimony to which defendant's trial counsel referred. We fail to see how this invited error constitutes prejudice. Even if the trial judge was confused as to the contents of one of the hearings, he made clear in his 1993 minute entry that at both sentencings he considered material relating to "the mental health, family background and history of Luis Mata." We also believe, as noted *infra*, that the appropriate time for defendant to raise an objection to Wollschlager's erroneous reference to the sister's testimony was on his appeal or first PCR, and certainly not now, at oral argument on a motion to stay in support of defendant's fourth PCR.

"shot gunning" every possible issue which present counsel seems to urge.

The trial court pointed out that although defendant claimed mitigation evidence was not considered at sentencing, there was no showing to that effect.[6]

■■■ Defendant filed a motion for rehearing in October 1984, in which he again asserted the incompetence of appellate counsel. The trial court held that *State v. Lee, Jones v. Barnes,* and *Strickland v. Washington* supported the prior decision to deny relief. These cases and others indicate that a trial judge acts within the scope of discretion in deciding whether a defendant's claim of ineffective assistance of counsel has merit. Appellate review of defendant's counsel's performance will "be highly deferential." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).[7] "Absent an abuse of discretion, we will not disturb a trial court's denial of post-conviction relief." *State v. Amaya–Ruiz,* 166 Ariz. 152, 180, 800 P.2d 1260, 1288 (1990), *cert. denied,* 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991) (citing *State v. Adamson,* 136 Ariz. 250, 665 P.2d 972, *cert. denied,* 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983)). We will reverse a conviction due to ineffective assistance under this exacting standard only where counsel's performance was unreasonable under all the circumstances and there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Amaya–Ruiz,* 166 Ariz. at 180, 800 P.2d at 1288.

After this court set an execution date for 1986, defendant's new counsel (Daniel Patter-son) filed a petition for a writ of habeas corpus in the federal district court. The district court, in its 1987 decision denying defendant's action, addressed four arguments regarding mitigation: intoxication at the time of the murder, psychological disorder, history of drug addiction, and lack of formal education, and stated that

> [t]he burden was on Mata to show that mitigating factors existed by a preponderance of the evidence. It was up to the trial court to determine whether the evidence constituted a mitigating circumstance. Here, the trial judge found the four factors Mata offered did not constitute a mitigating circumstance precluding capital punishment. The Constitution only requires the sentencer to hear and consider all the mitigating evidence the defendant offers. There is no requirement the court agree with the defendant that it is mitigating.

The Ninth Circuit affirmed the district court in a per curiam opinion issued July 1, 1991. *Mata v. Ricketts,* 937 F.2d 467, *opinion amended and superseded,* 981 F.2d 397 (9th Cir.1991), *cert. denied,* —— U.S. ——, 115 S.Ct. 436, 130 L.Ed.2d 348 (1994).

Defendant filed his third PCR in September 1992. The petition appeared at the trial court in an envelope bearing the name "Arizona Capital Representation Project," but because no counsel was named in the petition, the trial court appointed the Public Defender to act on Mata's behalf. After the Public Defender withdrew because of a conflict, the court appointed John Rood, who eventually also withdrew. Finally, the court appointed John Antieau, who filed a supplemental petition in January 1993, and another in March

---

6. The trial court had explicitly stated in special verdicts in 1977 and 1978 that it had considered all mitigating evidence and found none of it to be mitigating. Defendant seems to believe that a trial court only "considers" mitigating evidence if it imposes a mitigated sentence. The law is to the contrary. So long as the trial court considers the evidence, the judge is not bound to conclude that the evidence calls for leniency. *State v. Zaragoza,* 135 Ariz. 63, 70, 659 P.2d 22, 29 (1983); *Raulerson v. Wainwright,* 732 F.2d 803, 807 (11th Cir.1984), *cert. denied,* 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984).

7. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted).

1993. In April 1993, Antieau requested that the Arizona Capital Representation Project be authorized to associate as co-counsel and requested an extension of time to supplement the PCR. He filed another supplement in July 1993. In August 1993, the Arizona Capital Representation Project filed its own reply which added, amended, and supplemented the preceding claims.

The trial court decided in November 1993 that defendant's claim of ineffective assistance of counsel as to Wollschlager was precluded, and alternatively was without merit. Specifically, the trial judge noted that:

> Sixteen years after the pretrial motions, the voluntariness hearings, the trial, the motion for new trial and the two sentencings, counsel for the Project with the benefit of hindsight alone and the affidavits of two psychologists who never saw or who probably never heard of petitioners for the first sixteen years of this case, now claim Mr. Wollschlager provided ineffective assistance.... Legally ... the court finds these claims to be conclusively precluded. Even more importantly, the record here also clearly shows that counsel Wollschlager presented every available item of evidence with regard to the defendant's competence to be tried, his mental condition, and his state of mind.

The trial court also held that defendant's claim of ineffective assistance of Glicksman and Walker on his second PCR was without merit:

> Since the court knows and the record shows that all of this material was provided and considered as relating to Luis Mata not once but twice for both sentencings, the claim has the same validity as to Glicksman as to Wollschlager. NONE. Because Wollschlager provided all that there was and the record indicates Luis Mata refused to even fill out an MMPI for the two additional psychiatric and psychological witnesses who this court provided for him at the second sentencing, the court finds this issue clearly precluded.

Moreover, the court held that the issue of effective assistance of counsel on a PCR was legally precluded given the holding in *Bonin v. Vasquez,* 999 F.2d 425, 429 (9th Cir.1993) (refusing to extend the right of effective assistance of counsel to state collateral proceedings or federal habeas corpus proceedings).

Defendant now comes before this court on a motion to stay execution arising from his fourth PCR. Defendant claims in his motion to stay that mitigating evidence was not properly considered by the trial court.

### B. Preclusion

■ Defendant is precluded from claiming his counsel at sentencing was ineffective in not presenting evidence in mitigation for two reasons. First, he has presented this "newly discovered evidence" before and thus is precluded from presenting it again. Second, to the extent he has not raised ineffective assistance claims or presented evidence to which he had access in previous post-conviction proceedings, he has knowingly, intelligently, and voluntarily waived the right to do so.

A.R.S. §§ 13–4231 to 13–4240 and Rule 32, Ariz.R.Crim.P., govern a defendant's right to post-conviction relief. A.R.S. § 13–4231(1)–(7) and Rule 32.1(a)–(g) list the types of claims over which a court has jurisdiction in post-conviction proceedings. Both the statute and the rule allow, *inter alia,* claims that the conviction or sentence was in violation of the federal or state constitution, that newly-discovered material facts exist, which may require that the conviction or sentence be vacated, and that there has been a significant change in the law. A.R.S. § 13–4231(1), (5), and (7); Rule 32.1(a), (e), and (g), Ariz. R.Crim.P.

However, both the statute and the rule preclude defendants from raising claims "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding," or "[k]nowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding." A.R.S. § 13–4232(A)(2)–(3) (pre–1992); Rule 32.2(a)(2)–(3) (pre–1992). Moreover, both statute and rule permitted the court to infer waiver from a defendant's failure to raise an issue "after being advised by the sentencing judge of the necessity that he do so, or his failure to raise any ground then available to him in a previ-

ous Rule 32 proceeding in which he was represented by counsel...." A.R.S. § 13–4232(C) (pre–1992); Rule 32.2(c) (pre–1992).

■ A stay of execution may be granted by this court only if the defendant sets forth in his motion to stay "with particularity those issues raised which are not precluded under § 13–4232." A.R.S. § 13–4234(F) (1995 Supp.).[8] Defendant failed to do what the statute requires. He did not set forth with particularity the issues not precluded under A.R.S. § 13–4232. Instead, defendant merely included a conclusory paragraph at the end of his seventeen-page motion to stay which read: "These claims are not precluded because they rest upon either newly discovered facts, or recent change in the law".[9] Although we decide the issue of preclusion on other grounds, we also note that defendants who do not comply with the requirements of A.R.S. § 13–4234(F) may be barred from obtaining post-conviction relief.

Defendant claims that his death sentence should be vacated because he has "amassed substantial additional mitigation evidence that would be presented at a resentencing hearing." The "new" evidence which defendant has "amassed" includes such facts as:

> Defendant was born hydrocephalic at home in Mexico, the fifth of sixteen children.... He suffered severe headaches throughout his childhood, suggesting neurological impairment.... Luis experienced substantial health problems from ... pesticide exposure.... Luis was emotionally, as well as physically deprived ... Luis's father was a severe alcoholic who became extremely violent when drunk.... When Luis was six, he fell off a truck, landed on his head and convulsed.... Luis was a slow learner in school and children made fun of him.... Luis has since been diagnosed as functionally mentally retarded.... He quickly became addicted to alcohol and drugs, as he was genetically predisposed to do.

Defendant argues that if these "new" facts had been known to psychologists who saw him in the late 1970s, he would have received a different diagnosis and therefore a different sentence. The new evidence is also the basis for defendant's claim that he received ineffective assistance of counsel at sentencing, because defendant claims Wollschlager was ineffective in not uncovering and presenting this evidence.

Defendant has not presented "newly discovered" facts, as A.R.S. § 13–4231 requires, but facts to which he has had access for eighteen years throughout these protracted proceedings. Simply because defendant presents the court with evidence for the first time does not mean that such evidence is "newly discovered." *See State v. Dogan,* 150 Ariz. 595, 600, 724 P.2d 1264, 1269 (App.1986) ("Newly-discovered material facts alleged as grounds for post-conviction relief are facts which come to light after the trial and which could not have been discovered and produced at trial through reasonable diligence."). If anyone was in a position to provide the numerous psychologists (court-appointed and otherwise) who have worked on this case with the background information to which defendant now points, it was defendant himself. All of the evidence as to defendant's history was available to defendant and his counsel during his two sentencings, his direct appeal, and his three previous PCRs.

---

8. Prior to the 1992 amendments, this subsection required that the petition "set forth the reasons for not raising the claim within one year of the date of the mandate affirming the conviction. If the petition does not state the reason why the petition was not brought within the one-year limitation or the petition does state these things but the court finds them lacking in veracity or credibility, the petition shall be dismissed without requiring a response." A.R.S. § 13–4234(F).

9. The "change in law" to which defendant refers is *State v. Krum,* 182 Ariz. 108, 893 P.2d 759 (App.1995). In *Krum,* the court of appeals held that petitioners have the right to effective assistance of counsel in post-conviction proceedings. However, defendant's argument fails because the court of appeals' decision in *Krum* was overruled by this court in *State v. Krum,* 183 Ariz. 288, 291–92, 903 P.2d 596, 599–600 (1995), in which we held that "ineffective assistance on a prior PCR petition is not a valid, substantive claim under Rule 32 because, for petitioners like Krum, there is no federal constitutional right to effective counsel in a PCR proceeding. Thus, even if a statutory right to effective assistance existed, Rule 32 would not provide a remedy for its violation." (footnote omitted).

Even ignoring defendant's own role in failing to provide court-appointed mental health witnesses with information (*see supra* at 332, 916 P.2d at 1048), none of the so-called "new" evidence is new. Defendant has, in varying degrees, made the argument he now makes regarding mitigation on at least four prior occasions. At his 1978 resentencing, defendant presented as mitigation both his background and his mental abilities. (*See supra* at 329, 916 P.2d at 1045). On his second PCR, defendant claimed as error the sentencing court's failure to consider his lack of an education and raised the argument of ineffective assistance of counsel. (*See supra* at 330, 916 P.2d at 1046). On his federal habeas petition, defendant made arguments concerning his psychological disorder, drug addiction, and lack of formal education. (*See supra* at 331, 916 P.2d at 1047). On his third PCR, defendant raised the identical arguments that he raises on this petition.[10]

Finally, in his motion to stay execution, defendant himself points out that the presentence report, used by the trial judge in defendant's 1977 sentencing (*see supra* at 331, 916 P.2d at 1047), "contained mitigation evidence that Mr. Mata had a history of drug addiction, including heroin, and severe alcoholism, suffered a severe head injury as a small child which resulted in recurring, persistent headaches and had 'at best borderline intelligence.'" Defendant asserts that he has startling new evidence, which his attorney erred in failing to discover or introduce, that might have led to a different verdict had it been presented at sentencing. At the same time, defendant contends that much of this same evidence was wrongly rejected eighteen years ago by the trial judge.

Defendant may not inject the record with error by arguing an issue incompletely or inadequately on a PCR and then claiming on a subsequent PCR that the evidence omitted in the prior PCR is now "new" evidence. *See Harding v. Lewis*, 834 F.2d 853, 859 (9th Cir.1987), *cert. denied*, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988) (refusing to presume prejudice where defendant chose to represent himself at mitigation hearing, intentionally withheld mitigating evidence, and argued ineffective assistance of counsel in post-conviction proceeding). This approach has been rejected by Arizona courts:

> The only difference at the Rule 32 hearing was in the amount of detail presented on the disorder. The trial court ruled that its sentences would have been the same even if the evidence had been presented earlier. That assessment is not something we can overturn on review.

*State v. Morales*, 170 Ariz. 360, 365, 824 P.2d 756, 761 (App.1991).

If preclusion sets any boundaries at all, it prevents a defendant from endlessly raising claims he has raised before, claiming each new incarnation to be an issue of first impression. Otherwise, criminal defendants could endlessly litigate effectiveness of counsel by claiming that their latest version (complete with evidence which, as in this case, could have been presented many years before) was not presented on earlier petitions due to counsel's inadequate representation. Such an approach would lead to a never-ending tunnel of PCRs.

### C. Waiver

■ Defendant asserts that the failure to raise an ineffective assistance of counsel claim (based on failure to present mitigating evidence) in his second PCR in 1983 (as well as his first, in 1978) did not operate as a waiver because "[t]o support a finding of waiver under [Rule 32.2] subsection (c), the record must indicate that petitioner was aware of the necessity of raising in his appeal the claim he now presents and that he knowingly, voluntarily and intentionally waived his right to present his claim" (citing *State v. Carriger*, 143 Ariz. 142, 146, 692 P.2d 991, 995 (1984), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985)). However, as stated above, both statute and rule in effect at that time permitted the court to

---

10. In his third PCR, defendant claimed:
 [T]rial counsel failed to locate and interview witnesses who knew Petitioner's background and who could testify about his history of birth injuries, severe poverty and malnutrition, exposure to pesticides, alcoholic father who terrorized and abused Petitioner and other family members, significant head injuries, lack of medical care, and learning disabilities.

infer waiver from defendant's failure to raise an issue "after being advised by the sentencing judge of the necessity that he do so, or his failure to raise any ground then available to him in a previous Rule 32 proceeding in which he was represented by counsel...." *See supra* at 333, 916 P.2d at 1049, citing A.R.S. § 13–4232(C) (pre–1992); Rule 32.2(c) (pre–1992).

The record supports a finding that defendant waived his ineffective assistance of counsel claim (and his claim as to mitigating evidence) "knowingly, voluntarily, and intentionally" in 1978 and 1983. The Petition for Post–Conviction Relief filed by defendant in April 1978, and in June 1983, was a form which stated in capital letters on the front page:

NO ISSUE WHICH HAS ALREADY BEEN RAISED AND DECIDED ON APPEAL OR IN A PREVIOUS PETITION MAY BE USED AS A BASIS FOR THIS PETITION

TAKE CARE TO INCLUDE EVERY GROUND FOR RELIEF WHICH IS KNOWN AND WHICH HAS NOT BEEN RAISED AND DECIDED PREVIOUSLY, SINCE FAILURE TO RAISE ANY SUCH GROUND IN THIS PETITION WILL BAR ITS BEING RAISED LATER

The form then sets forth a list of possible grounds for relief, with boxes next to each, so a defendant could simply make a mark in the box next to each claim he wished to raise. One of these claims was: "The denial of the constitutional right to representation by a competent lawyer at every critical stage of the proceeding." Another claim was: "The existence of newly-discovered material which requires the court to vacate the conviction or sentence."

Defendant's first and second PCR forms clearly stated that issues not raised would be precluded and listed the very issues defen-dant now raises. The PCR forms operate to advise the petitioner of the necessity to raise all issues and to fulfill the requirement, contained in the pre-amendment versions of A.R.S. § 13–4232(C) and Rule 32.2(c), that the sentencing judge so advise the petitioner.

Even if those forms did not provide adequate knowledge to allow an inference of waiver, defendant may not challenge every tactical decision his trial counsel made at sentencing. In *State v. Lee*, 142 Ariz. 210, 215, 216–17, 689 P.2d 153, 158, 159–60 (1984), this court held that:

[T]he power to decide questions of trial strategy and tactics rests with counsel and the decision as to what witnesses to call is a tactical, strategic decision.... *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the A.B.A. Standards indicate that a criminal defendant, having agreed to be represented by counsel, is bound by counsel's decisions on matters entrusted to counsel and that a criminal defendant cannot, therefore, successfully claim ineffective assistance of counsel with respect to them. (Citation omitted.)

Defendant would like us to deduce, from a record made cold by the passage of eighteen years, that counsel at sentencing failed to protect his interests by not investigating potential mitigating evidence from Mata's background. However, Wollschlager has submitted a sworn affidavit which indicates he investigated members of Mata's family as possible witnesses at Mata's aggravation/mitigation hearing. He was informed by family members that Luis Mata "had been a bad influence on Alonzo, that they had nothing good to say in Luis's behalf, and that they were going to try to save Alonzo."[11] Wollschager's strategic decision not to call these family members seems well within the

11. Many of the arguments now made on behalf of Mata by the Arizona Capital Representation Project simply fail *to acknowledge the record in* this case. For example, the Project now takes the position that evidence of Luis Mata's drug abuse and addiction was *not properly considered* as mitigation by the trial court. However, at the aggravation/mitigation hearing, Wollschlager ar-gued that evidence of Luis' use of heroin was irrelevant and should not be considered by the court. We will not second guess trial counsel's strategy, which seems to have been to avoid introduction of evidence which showed his client was involved in the use of hard drugs and cast his client in a negative light.

bounds of competent decision-making.[12]

### D. Ineffective Assistance of Counsel

 Defendant's contention seems to be that to the extent he waived the arguments by failing to present the evidence on prior PCRs, this failure was due to ineffective assistance of post-conviction counsel. Defendant's position relies on the notion that he deserves effective representation on his petition for post-conviction relief, so that he can protect his right to effective counsel at trial and on appeal. If this argument were correct, and defendant were entitled to effective assistance of counsel on his first petition, he would need effective representation on the second petition, or he might have no way of establishing that his right was violated on the first. If counsel on the second petition was ineffective, he would require a third petition challenging the second. Defendant would be entitled not to effective representation, but to perpetual representation.

This same concern led the Ninth Circuit Court of Appeals to hold that "the protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings." *Bonin*, 999 F.2d at 430; *cf. Lammie v. Barker*, 185 Ariz. 263, 264, 915 P.2d 662, 663 (1996) ("The pleading defendant does not ... have a right to appointed counsel in Rule 32 proceedings beyond the trial court's mandatory consideration and disposition of the PCR."); *State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996) ("Our constitution does not require, and the rules do not extend, the right to appointed counsel for indigent defendants in Rule 32 proceedings beyond the trial court's mandatory consideration and disposition of the PCR." We find the court's reasoning in *Bonin* to be persuasive:

> There is a practical reason why we will not follow the Public Defender's recommendation [to extend the right to counsel to defendant's first PCR]. The actual impact

of such an exception would be the likelihood of an infinite continuum of litigation in many criminal cases. If a petitioner has a Sixth Amendment right to competent counsel in his or her first state post-conviction proceeding because that is the first forum in which the ineffectiveness of trial counsel can be alleged, it follows that the petitioner has a Sixth Amendment right to counsel in the second state post-conviction proceeding, for that is the first forum in which he or she can raise a challenge based on counsel's performance in the first state post-conviction proceeding.... And so it would go.... As a result, the "exception" would swallow the rule. To obviate such an absurdity, we hold that the protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings.

*Bonin*, 999 F.2d at 429–30. This same reasoning led our court of appeals to hold that " '[t]here is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.' This is true even though there exists a state-created right to counsel on post-conviction proceedings after exhaustion of the appellate process." *State v. Armstrong*, 176 Ariz. 470, 474–75, 862 P.2d 230, 234–35 (App.1993) (quoting *Coleman v. Thompson*, 501 U.S. 722, 751–53, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)) (citations omitted).

We find no point at which we could draw a rational distinction; if defendant deserved effective representation on his first PCR to litigate effectiveness on appeal, then it must follow that he be effectively represented on the second in order to litigate the first. This is because defendant's argument is based on the ill-begotten notion that the right to effective counsel on appeal is empty without effective counsel to challenge appellate counsel's performance. According to defendant's own

---

12. We emphasize, however, that it is unnecessary to reach the merits of the issue of Wollschlager's competence. Defendant has presented the "new" mitigating evidence on several occasions in the past. As noted above, defendant is precluded from making arguments he has made in

prior appellate or post-conviction proceedings. Also, as we have noted, to the extent defendant's argument of counsel's failure to introduce "new" evidence has not been made before, it is waived because defendant did not make the argument in his prior appeal and three prior PCRs.

logic, the right to effective assistance on the first PCR would also be meaningless without another proceeding in which defendant could argue that counsel on that petition was inadequate. We reject this infinitely regressive notion.

We are obligated by the Arizona Constitution to attempt to protect the rights of the victims of crime, which includes the right "[t]o a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. 2, § 2.1(A)(10). This case has, regrettably, already been in the courts far too long. If we were to accept defendant's present arguments, this case and others like it, would go on indefinitely. We find Justice O'Connor's language in *Teague v. Lane* to be particularly compelling:

> Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions "shows only that 'conventional notions of finality' should not have *as much* place in criminal as in civil litigation, not that they should have *none*."

489 U.S. 288, 309, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989) (citation omitted).

## CONCLUSION

The motion to stay is denied. Upon motion of the state, a new warrant for defendant's execution will issue.

FELDMAN, C.J., and MARTONE, J., and ROBERT J. CORCORAN, Justice (Retired), concur.

ZLAKET, Vice Chief Justice, dissenting in part, concurring in part.

I am not a fan of footnotes. I find myself in general agreement with the Honorable Burton S. Laub of Pennsylvania, who once observed that "anyone who reads a footnote in a judicial opinion would answer a knock at his hotel door on his wedding night." Ruggero J. Aldisert, *Opinion Writing* 177 (1990). In recent years, however, I have succumbed to the enveloping footnote culture by increasingly relying on the little critters in my writings. The pending matter has persuaded me to resist any such urge in the future.

In my view, the attention paid to the *Richmond* footnote is quite remarkable. Rather than simply stating the obvious—that it is and was intended to be dicta because holdings do not appear in footnotes—the majority painstakingly attempts to demonstrate why this particular footnote was "incorrect." It does so, moreover, despite the fact that the (F)(6) aggravating factor is satisfied here by the "especially cruel" finding, making it unnecessary to address the other elements (heinous or depraved) that were focused upon in the *Richmond* footnote. *See State v. West*, 176 Ariz. 432, 448, 862 P.2d 192, 208 (1993) ("[A] finding of any one of the three factors will suffice for finding that [the (F)(6) ] aggravating factor exists.").

Hoping not to sound defensive, I submit that the footnote was, and still is, a correct statement of law. As recently as 1990, the United States Supreme Court observed that there can be "no serious argument that Arizona's 'especially heinous, cruel or depraved' aggravating factor is not facially vague." *Walton v. Arizona*, 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990). The majority in *Walton* nevertheless held that our recent judicial construction of the (F)(6) factor satisfies constitutional requirements. *Id.* But see id. at 693–98, 110 S.Ct. at 3078–81 (Blackmun, J., dissenting); and *Lewis v. Jeffers*, 497 U.S. 764, 784–98, 110 S.Ct. 3092, 3104–12, 111 L.Ed.2d 606 (1990) (Blackmun, J., dissenting). The pivotal question here seems to be *when* this constitutional narrowing took place. I respectfully submit that both case law and common sense establish *Gretzler*'s five-factor definition of "heinous or depraved" as that defining moment.

In *Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), the defendant challenged this court's independent review of his sentence, in which a majority of the justices voted to uphold the (F)(6) factor but failed to agree on a basis—cruelty, heinousness, or depravity. The issue, as framed by Justice O'Connor, was "whether the Supreme Court of Arizona has cured petitioner's death sentence of *vagueness* error." *Id.* at 41, 113 S.Ct. at 531 (emphasis added). The mistake that needed to be "cured" oc-

curred "when the sentencing judge gave weight to an *unconstitutionally vague* aggravating factor." *Id.* at 52, 113 S.Ct. at 537 (emphasis added). Thus, we know that the terms "heinous" and "depraved" had not yet been constitutionally narrowed at the time of Richmond's sentencing in March 1980. The state agreed, but cited *Gretzler* for the proposition that this court's more recent reweighing had been properly performed.

Respondents do not argue that the factor had been narrowed adequately prior to petitioner's resentencing. Thus it would have been error for Judge Roylston to give weight to the (F)(6) factor, if he indeed balanced the aggravating and mitigating factors in resentencing petitioner, and respondents now agree that the judge did engage in this weighing process.... Nor do respondents contend that the (F)(6) factor had no effect on the sentencing judge's calculus and therefore was harmless.

Rather, they point to *State v. Gretzler, supra,* which issued subsequent to the resentencing but prior to [*State v. Richmond,* 136 Ariz. 312, 666 P.2d 57 (1983)] (*Richmond II*), and which provided an adequate narrowing construction of the "especially heinous, cruel or depraved" factor. See *Lewis v. Jeffers, supra,* 497 U.S., at 777–778, 110 S.Ct., at 3101 (holding that *Gretzler* definitions adequately narrowed (F)(6) factor); *Walton v. Arizona, supra,* 497 U.S., at 652–655, 110 S.Ct., at 3056–3058 (same). Respondents assert that the principal opinion in *Richmond II* properly applied the *Gretzler* construction of the (F)(6) factor, while the concurrence ignored the factor, and that both opinions reweighed. Petitioner argues that the principal opinion improperly applied *Gretzler,* and that the concurrence did not reweigh.

*Richmond v. Lewis,* at 47–48, 113 S.Ct. at 534–35.

*State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, was decided in January 1983. If, as the majority now asserts, *Gretzler* merely cataloged prior cases but did not create the now-constitutional standard, one is left wondering what momentous event occurred between 1980 and 1983 that transformed the facially vague into the constitutionally narrowed. Obviously, there was nothing until *Gretzler*'s careful enumeration of particular factors to be considered in determining heinousness or depravity. That is what the above language clearly indicates and what the state obviously agreed to in *Richmond,* despite its current protestations to the contrary.

Moreover, it is what we have said. "*Gretzler* is critical to the *constitutional* application of the 'cruel, heinous or depraved' aggravating circumstance...." *State v. King,* 180 Ariz. 268, 286, 883 P.2d 1024, 1042 (1994) (emphasis added). As observed by this court in *State v. Vickers,* 159 Ariz. 532, 543 n. 2, 768 P.2d 1177, 1188 n. 2 (1989), albeit in one of those dratted footnotes again:

We have attempted to give a narrowing interpretation to these admittedly broad subjective terms [heinous, cruel or depraved]. *See State v. Gretzler,* 135 Ariz. 42, 50–53, 659 P.2d 1, 9–12, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). We believe we have successfully narrowed § 13–703(F)(6), and that we have applied that narrow interpretation consistently.

In *State v. Milke,* 177 Ariz. 118, 125, 865 P.2d 779, 786 (1993), we said:

The Supreme Court has determined that the term "especially heinous, cruel or depraved" is facially vague. *Richmond v. Lewis,* 506 U.S. 40, 46, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992); *Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990). However, the Court has held that this court's interpretation of that phrase meets constitutional requirements. Most recently in *Richmond v. Lewis,* 506 U.S. at 50, 113 S.Ct. at 536, the Court cited *Gretzler* as "*the narrowing construction* of Arizona's (F)(6) factor." (Emphasis added.)

Again, in *State v. Barreras,* 181 Ariz. 516, 521–22, 892 P.2d 852, 857–58 (1995), we said:

Although the *Gretzler* factors are not absolutely exclusive, *see State v. Milke,* 177 Ariz. 118, 126, 865 P.2d 779, 787 (1993), they provide a consistent and rationally reviewable standard for the otherwise vague (F)(6) "especially heinous, cruel or depraved" factor, thus ensuring the con-

tinuing constitutionality of our death penalty statute and facilitating our independent review. *See ... Richmond v. Lewis,* 506 U.S. 40, 49–51, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (citing *Gretzler* as "the narrowing construction of Arizona's (F)(6) factor"). We therefore urge trial courts to apply the *Gretzler* standards when considering this aggravating circumstance.

It is true, as *Gretzler* itself implies, that the five-pronged test was a compilation of factors found in prior cases to constitute heinousness or depravity. 135 Ariz. at 51–53, 659 P.2d at 10–12. This does not mean, however, that the discretion of trial judges had been adequately guided by those earlier decisions, as required by *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). At best, those judges were left to follow the *Knapp* criteria—dictionary definitions of "heinous" and "depraved" that were no more easily understood and applied than the words being defined. *See* 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977). Alternatively, they could attempt to apply holdings from the conglomeration of random, uncollected, and often inconsistent cases that before *Gretzler* constituted our capital sentencing jurisprudence. It is almost inconceivable, however, that any pre-*Gretzler* trial judge could have predicted which particular factors would eventually be singled out by this court for special treatment, or as being more or less important than others. For example, how could anyone know that senselessness and helplessness alone would not normally lead to a finding of "heinous" or "depraved"? 135 Ariz. at 52–53, 659 P.2d at 11–12.

I respectfully submit that the majority's analysis of the *Richmond* footnote misses the mark in other ways as well. First, regardless of whether *Godfrey* narrowed an unconstitutionally vague aggravating circumstance or analyzed a constitutionally narrowed factor, the underlying rationale is the same—a facially vague factor can only be applied if it has been given an adequate narrowing construction by the state court. Our footnote in *Richmond* cited *Godfrey* for this established tenet of capital jurisprudence and nothing more. Indeed, the Supreme Court cited *Godfrey* for the same basic proposition in

*Richmond v. Lewis,* 506 U.S. at 46, 113 S.Ct. at 534, to wit: "[A] statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty." Thus, the majority engages in hair splitting when it challenges *Godfrey*'s applicability.

Second, it is undeniable that *Gretzler* has been the standard relied on by this court in reviewing death penalty cases where the (F)(6) factor rests on a finding of heinous or depraved. Even the most cursory review of our post-*Gretzler* decisions will reflect that we invariably refer to that case in analyzing death sentences. *E.g., State v. Murray,* 184 Ariz. 9, 37, 906 P.2d 542, 570 (1995); *State v. Walden,* 183 Ariz. 595, 618–19, 905 P.2d 974, 997–98 (1995).

Incredibly, the majority ignores the Supreme Court's plain language in *Walton, Jeffers,* and *Richmond,* which clearly indicates that *Gretzler* narrowed the (F)(6) factor. The majority opinion states:

> Nowhere in its decision in *Jeffers* did the Supreme Court announce that this narrowing had occurred in *Gretzler.* In fact, *Jeffers* cites to *Gretzler* directly only once:
>
>> In light of the Arizona Supreme Court's *narrowing construction* of the "especially heinous ... or depraved" aggravating circumstance, *see State v. Gretzler,* 135 Ariz. at 52–53, 659 P.2d at 11–12 (listing factors), the Arizona Supreme Court could reasonably have concluded that respondent committed the murder in an "especially heinous ... or depraved manner."
>
> 497 U.S. at 784, 110 S.Ct. at 3104. Conspicuously, *Gretzler* was cited in *Jeffers* with regard to whether (F)(6) was adequately applied, not whether it was adequately narrowed. *Jeffers'* reference to *Gretzler* is consistent with our interpretation; *Gretzler* simply "listed factors."

*Ante* at 328, 916 P.2d at 1044 (emphasis added). In my view, the majority strains mightily, but unpersuasively, to reach this conclusion. By its plain language, *Jeffers* refers to *Gretzler* as "the Arizona Supreme Court's narrowing construction" of (F)(6). Moreover, as previously quoted, the Supreme Court in *Richmond v. Lewis* stated again

that *Gretzler* "provided an adequate narrowing construction of the 'especially heinous, cruel or depraved' factor. See *Lewis v. Jeffers,* ... (holding that *Gretzler* definitions adequately narrowed (F)(6) factor); *Walton v. Arizona,* ... (same)." at 48, 113 S.Ct. at 535. While the majority chooses to ignore these clear and unequivocal pronouncements, as well as the Court's parenthetical descriptions of its own holdings, the only conclusion I am able to draw is that *Gretzler* transformed the "heinous or depraved" standard into a constitutionally sound aggravating factor.

This court's view of *Jeffers* is also clearly at odds with what the dissenters in that case thought had been decided. "The majority suggests, however, that the 'narrowing construction' was announced by the Arizona Supreme Court in *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, cert. denied, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983)." 497 U.S. at 788, 110 S.Ct. at 3104 (Blackmun, J., dissenting). The dissent disagreed with this suggestion, arguing that *Gretzler* had narrowed nothing and that (F)(6) was unconstitutionally vague both before and after that decision.

I am also rather surprised that the majority here seeks to bolster its position by relying on a federal district court opinion that is not binding on us and represents only the view of a single judge. *Woratzeck v. Lewis,* 863 F.Supp. 1079 (D.Ariz.1994) (cited favorably in *Gerlaugh v. Lewis,* 898 F.Supp. 1388, 1417 (D.Ariz.1995)). More importantly, it ignores the significant number of federal judges who have come to quite an opposite conclusion. In 1988, for example, eleven judges of the Ninth Circuit stated: "Thus, by offering a checklist for courts considering the (F)(6) circumstance, *Gretzler* appeared to be an attempt to provide a limiting construction to the (F)(6) terms and their varied definitions that would be able to withstand constitutional attack." *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988). The circuit court then proceeded to hold that this attempt was unsuccessful. *Id.* at 1032; *but see Walton v. Arizona, supra* (effectively abrogating *Adamson* ). The four-judge minority in *Lewis v. Jeffers, supra,* felt the same way. The issue, therefore, is hardly one about which

there has been agreement from the federal bench.

Finally, the majority finds "untenable the notion that *Gretzler* ... somehow created a new, constitutional version of (F)(6)" because *Gretzler*'s own sentence could not have been affirmed. *Ante* at 327, 916 P.2d at 1043. The argument escapes me. It is well settled that a state appellate court may cure a sentencing court's application of a vague aggravating factor by applying an adequately narrowed construction. *Richmond v. Lewis,* 506 U.S. 40, 45–47, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (citing *Lewis v. Jeffers, supra; Walton v. Arizona, supra* ). Thus, Gretzler did not need to be resentenced because this court, under its duty to independently reweigh, articulated and then applied a constitutionally narrowed (F)(6) standard.

I concur in the remainder of today's opinion and in the final outcome.